No. 23-15016

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MARK BAIRD, *et ano.*,
*Plaintiffs-Appellants*,

v.

ROB BONTA, in his official capacity as
Attorney General of the State of California,
*Defendant-Appellee*,

Appeal from United States District Court for the Eastern District of California
Civil Case No. 2:19-cv-00617-KJM-AC (Honorable Kimberly J. Mueller)

## OPENING BRIEF OF PLAINTIFFS-APPELLANTS

Amy L. Bellantoni
THE BELLANTONI LAW FIRM, PLLC
2 Overhill Road, Suite 400
Scarsdale, New York 10583
(914) 367-0090 (t)
(888) 763-9761(f)
*abell@bellantoni-law.com*

*Attorneys for Plaintiffs-Appellants*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................... i

INTRODUCTION ..................................................................................... 1

JURISDICTION........................................................................................ 3

ISSUES PRESENTED............................................................................... 4

CONSTITUTIONAL AND STATUTORY PROVISIONS.................................... 4

STATEMENT OF THE CASE...................................................................... 5

I. California's Tradition of Unregulated Open Carry ................................. 6

II. California's Handgun Licensing Scheme............................................. 6

III. Effect on Appellants............................................................................ 7

IV. Procedural History ............................................................................. 8

STANDARD OF REVIEW ......................................................................... 9

SUMMARY OF THE ARGUMENT ............................................................. 10

ARGUMENT ........................................................................................... 13

I. The Lower Court Erroneously Disregarded the Most Important Factor –
Appellants' Likelihood of Success on the Merits.................................... 14

II. The Lower Court Abused its Discretion by Applying the Thrice Rejected
"Interest Balancing" Forbidden in Second Amendment Challenges..................... 18

    A. *Bruen* Prohibits Interest Balancing in Second Amendment Challenges .. 19

# TABLE OF CONTENTS

**Page**

B. The Lower Court Abused its Discretion by Balancing Appellants' Second Amendment Rights Against the Government's Interest in Public Safety and Crime Prevention ........................................................... 20

C. If Balancing Under *Winter* is Applicable in Second Amendment Cases, the Equities Still Tip in Appellants' Favor ................................................ 22

III. Appellants Will Continue to Suffer Irreparable Harm ..................................... 23

IV. The Public Interest is Served by Enjoining Sections 25850 and 26350 ........... 24

V. The Lower Court Abused Its Discretion By Implementing an "Alternate Manner of Self-Defense" Factor .............................................................................. 25

CONCLUSION ...................................................................................................... 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Tradition P'ship, Inc. v. Bullock*,
  565 U.S. 1187 (2012) ........................................................................... 19

*Arizona Dream Act Coalition*,
  757 F.3d 1053 (9th Cir. 2014)............................................................... 23

*Ashcroft v. Am. C.L. Union*,
  542 U.S. 656 (2004) ............................................................................. 17

*Caetano v. Massachusetts*,
  577 U.S. 411 (2016) ............................................................................... 5

*D.C. v. Heller*,
  554 U.S. 570 (2008) ...................................................................... Passim

*Disney Enterprises, Inc. v. VidAngel, Inc.*,
  869 F.3d 848 (9th Cir. 2017)......................................................... 14, 15

*Doe v. Kelly*,
  878 F.3d 710 (9th Cir. 2017)................................................................. 23

*Duncan v. Becerra*,
  265 F. Supp. 3d 1106 (S.D. Cal. 2017)......................................... 13, 14

*Duncan v. Becerra*,
  742 F. App'x 218 (9th Cir. 2018) ................................................. 10, 13

*Elrod v. Burns*,
  427 U.S. 347 (1976) ............................................................................. 23

*Environmental Prot. Info. Ctr. v. Carlson*,
  968 F.3d 985 (9th Cir. 2020)................................................................. 13

*Friedman v. City of Highland Park, Ill.*,
  136 S.Ct. 447 (2015) ............................................................................. 25

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Fyock v. Sunnyvale*,
779 F.3d 991 (9th Cir. 2015)................................................................. 10

*G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*,
23 F.3d 1071 (6th Cir.1994).................................................... 24

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,
546 U.S. 418 (2006) ............................................. 22

*Hernandez v. Sessions*,
872 F.3d 976 (9th Cir. 2017)........................................ 23, 24

*Index Newspapers LLC v. United States Marshals Serv.*,
977 F.3d 817 (9th Cir. 2020).................................... 24

*J.S.R. by & through J.S.G. v. Sessions*,
330 F. Supp. 3d 731 (D. Conn. 2018)................................ 23

*McDonald v. City of Chicago, Ill.*,
561 U.S. 742 (2010)................................................... 19

*Melendres v. Arpaio*,
695 F.3d 990 (9th Cir. 2012)..................................... 23, 24

*Monterey Mech. Co. v. Wilson*,
125 F.3d 702 (9th Cir. 1997)........................................ 24

*Ms. L. v. U.S Immigr. & Customs Enf't ("ICE*,
310 F. Supp. 3d 1133 (S.D. Cal. 2018)............................ 23

*Muscarello v. United States*,
524 U.S. 125, 118 S.Ct. 1911, 141 L.Ed.2d 111 (1998)..................... 16

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
142 S. Ct. 2111 (2022) ................................................Passim

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Perfect 10, Inc. v. Amazon.com, Inc.*,
  508 F.3d 1146 (9th Cir. 2007)............................................................... 15

*Peruta v. County of San Diego*,
  824 F3d 919 (9th Cir 2016)................................................................... 16

*Rodriguez v. Robbins*,
  715 F.3d 1127 (9th Cir. 2013)............................................................... 23

*Sammartano v. First Judicial District Court*,
  303 F.3d 959 (9th Cir.2002)................................................................. 24

*Shuttlesworth v. City of Birmingham, Ala.*,
  394 U.S. 147 (1969) ............................................................................ 18

*Staub v. City of Baxley*,
  355 U.S. 313, 78 S.Ct. 277, 2 L.Ed.2d 302......................................... 18

*Young v. Hawaii,*
  U.S. App. LEXIS 8571, *142, __ F.3d __, 2021 WL 1114180 (9th Cir. March
  24, 2021) (en banc ........................................................................... 8, 16

*Winter v. Natural Res. Def. Council, Inc.*,
  555 U.S. 7 (9th Cir. 2014)............................................................... 13, 18

**Statutes**

28 U.S.C. § 1292(a)(1) ............................................................................. 4
28 U.S.C. § 1331 ...................................................................................... 3
28 U.S.C. § 1343 ...................................................................................... 3
42 U.S.C. § 1983 ...................................................................................... 3
42 U.S.C. § 1988 ...................................................................................... 3
Cal. Penal Code § 12031 .......................................................................... 1
Cal. Penal Code § 25850 ...................................................................Passim
Cal. Penal Code § 26350 .......................................................................... 6

U.S. Const. amend. II ................................................................................. 4
U.S. Const. amend. XIV ........................................................................... 5

## INTRODUCTION

The right to carry handguns in public is presumptively protected by the plain text of the Second Amendment. *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2137 (2022). And "to the extent later history contradicts what the text says, the text controls" because the "post-ratification adoption or acceptance of laws that are inconsistent with the original meaning of the constitutional text obviously cannot overcome or alter that text." *Bruen*, at 2137 (citation omitted).

Appellants seek to restore the citizens of California to the constitutionally aligned position that existed prior to the state's enactment of the Mulford Act of 1967. Up until that time, the free exercise of the right to carry a handgun open and exposed on one's person for self-defense in California was unregulated and largely unremarkable.

With the passage of the Mulford Act of 1967, the right to open carry a loaded firearm in public for self-defense was banned under threat of criminal sanctions. California Penal Code section 25850.[1] Open carry was eliminated altogether in 2012 with the passage of Penal Code 26350 banning the open carriage of an unloaded handgun for self-defense. While both criminal statutes provide some narrow

---

[1] See, Cal. A.B. 1591 (April 5, 1967) (amending Cal. Penal Code § 12031 to repealing law that allowed for open carry of loaded firearms).

exemptions[2], no exemption brings the regulations into constitutional compliance, nor do the exemptions apply to Appellants. [ER054 at ¶ 6; ER056 at ¶ 6].

Sections 25850 and 26350 regulate conduct "presumptively protected" by the plain text of the Second Amendment – the right to bear Arms. *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2126 (2022) ("In keeping with *Heller*, we hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.").

On August 8, 2022, Appellants filed their third motion to preliminarily enjoin Sections 25850 and 26350. Under the *Bruen* test, when a plaintiff's conduct is presumptively protected by the plain text of the Second Amendment, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation; only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.' *Bruen*, at 2126 (cleaned up).

Denying Appellants' motion, the lower court abused its discretion by, among other things, disregarding the *Bruen* test and applying the same public safety, means-end analysis affirmatively rejected by the Supreme Court. The lower court also failed to consider Appellants' likelihood of success on the merits, nor did the court hold

---

[2] Penal Code sections 26000-26060; 26351-26392.

Appellee to his burden of proving that Sections 25850 and 26350 are "consistent with this Nation's historical tradition of firearm regulation." *Bruen*, at 2126.

Appellee did not (and cannot) justify his enforcement of Sections 25850 and 26350 because there is no historical tradition of criminalizing conduct the Second Amendment mandates "shall not be infringed."

Just months ago, the *Bruen* Court "had little difficulty concluding" that "the plain text of the Second Amendment protects [Appellants'] proposed course of conduct - carrying handguns publicly for self-defense... Respondents do not dispute this…Nor could they." *Bruen*, at 2134.

As in *Bruen*, the lower court should have had "little difficulty concluding" that California's criminalization of the same conduct – carrying handguns publicly for self-defense - violates the Second and Fourteenth Amendments.

For these reasons and more, the lower court's denial of Appellants' third motion for a preliminary injunction was an abuse of discretion and should be reversed.

## JURISDICTION

The lower court had subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 because this case involves a constitutional challenge to Cal. Penal Code sections 25850 and 26350 and seeks relief under 42 U.S.C. §§ 1983 and 1988. The lower court denied Appellants' third motion for a preliminary injunction on

December 7, 2022 [ER001] and Appellants filed a timely notice of appeal on January 3, 2023. [ER017]. This Court has jurisdiction over the denial of a preliminary injunction under 28 U.S.C. § 1292(a)(1).

## ISSUES PRESENTED

1.      Whether California Penal Code sections 25850 and 26350 criminalizing the open carriage of handguns for self-defense violate the Second Amendment to the United States Constitution, as applied to the State of California under the Fourteenth Amendment.

2.      Whether the lower court abused its discretion when denying Appellants' preliminarily injunction.

## CONSTITUTIONAL AND STATUTORY PROVISIONS

This case implicates the Second and Fourteenth Amendments to the United States Constitution.

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.

The Fourteenth Amendment provides, in pertinent part: No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal

protection of the laws. U.S. Const. amend. XIV.

All applicable statutes are reproduced in the addendum to Appellant's opening brief.

## STATEMENT OF THE CASE

The Second Amendment protects the right of ordinary citizens to carry any weapon in common use. *Caetano v. Massachusetts*, 577 U.S. 411, 411–412 (2016) (per curiam) (stun guns). The right to carrying handguns publicly for self-defense is presumptively protected by the plain text of the Second Amendment protects. *Bruen*, at 2119.

## I. California's Tradition of Unregulated Open Carry

Unregulated open carry was an integral and largely unremarkable part of California's history for over 162 years[3] - substantially longer than it has been banned.[4] Until the enactment of the Mulford Act of 1967, which criminalized the public carriage of loaded firearms[5], California had no regulations on the open

---

[3] Since becoming a state in 1850, open carry was legal in California until 2012. https://www.latimes.com/socal/la-canada-valley-sun/news/tn-vsl-xpm-2011-10-12-tn-vsl-1013-opencarry-story.html

[4] When California first contemplated restrictions on public carry, it was a concealed carry ban, intended to apply only to Mexicans, that was debated in the legislature in 1856. It was not until 1863 that California banned *concealed* carry altogether only to repeal the ban 7 years later. NRA Institute for Legislative Action, Tuesday January 1, 2013, citing, "Three Years in California", Borthwick, J.D. (1857); Gunfighters, Highwaymen, & Vigilantes", McGrath, Roger (1984). https://d97yz4wvpgciz.cloudfront.net/articles/20130101/the-rise-and-fall-of-californias-first-concealed-carry-law

[5] Penal Law section 25850.

carriage of handguns for self-defense. Between 1967 and 2012, Californians were free to carry unloaded handguns open and holstered for self-defense, without penalty. But in 2012, California criminalized the open carriage of unloaded firearms for self-defense[6], banning the open carriage of handguns entirely.

## II. California's Handgun Licensing Scheme

In California, no license is required to possess a handgun in one's home but possessing a handgun outside of one's home is a crime. Sections 25850, 26350.

To lawfully carry a handgun outside of one's home for self-defense, whether open or concealed, requires applying for and obtaining a license from a statutorily defined licensing authority under Penal Code sections 26150 and 26155.

California is one of a handful of outlier jurisdictions that enforces a "may issue" handgun licensing scheme for public carry, which imbues absolute discretion in the licensing authority.[7] Despite *Bruen*'s words of caution to the "may issue" jurisdictions[8], California's licensing scheme remains unchanged.**[9]**

---

[6] Penal Code section 26350.
[7] Penal Code sections 26150 and 26155.
[8] *Bruen*, at 2162.
[9] The *Bruen* Court conditioned the continued implementation of the 6 outlier 'may issue' jurisdictions, like California, on the application of objective factors. But California remains subject to a discretionary, 'may issue' licensing scheme where the licensing authority has "unbridled and absolute power to prohibit" [*Shuttlesworth*, at 150] public carry – concealed or open. See, Penal Code sections 26150 and 26155.

On paper, Sections 26150 and 26155 permit the issuance of an open carry handgun license[10], but no open carry licenses have been issued in the State of California since open carry was banned in 2012[11] – a fact uncontested by Appellee. Nor can an open carry license be issued. Under Penal Code section 26175, entitled "Statewide Uniformity of Applications", all licensing authorities are required to use the statewide handgun licensing application created and published by Appellee. Appellee's statewide application only provides an avenue for *concealed* carry; there is no process for applying for, obtaining, or issuing an open carry license. [ER054 at ¶ 7].

Even if one could be sought, open carry licenses may only be issued in counties with a population under 200,000 and are invalid outside of the county of issuance.[12] Meaning that if open carry licenses were issued to Appellants, their right to carry a handgun for self-defense would end at the county line.

## III. Effect on Appellants

Appellants seek a return to pre-1967 Mulford Act California where the open carriage of a handgun for self-defense was lawful and the free exercise of the

---

[10] Penal Code sections 26150 and 26155 also apply to concealed carry licenses.
[11] See, California Department of Justice Response to FOIL request at ER059; see also, Penal Code section 26225, which requires that a copy of all firearms licenses issued (open carry and concealed carry) be "filed immediately" with the California Attorney General's Office.
[12] 26150(b)(2); 26155(b)(2).

constitutional right was not threatened by arrest, incarceration, and other criminal and civil penalties.

## IV.    Procedural History

Appellants, who are ordinary citizens with no prohibitors to the possession of firearms under state or federal law [ER054; ER056], filed their initial complaint on April 9, 2019 challenging both sets of criminal (25850 and 26350) and licensing (26150 and 26155) statutes. [ER453].   Appellants' first motion to preliminarily enjoin all four statutes was denied without prejudice on August 31, 2020 because, "Though plaintiffs have raised 'serious question' going to the merits of their Second Amendment claim, the balance of equities does not tip 'sharply' in their favor." [ER511 at p. 10].  The lower court decided that the balance of hardships weighed in the state's favor because even though Appellants' Second Amendment rights were "implicated…the state would suffer harm from being enjoined from enforcing a law intended to increase public safety." [ER511 at p. 9].[13]

On April 14, 2021, following this Court's en banc decision in *Young v. Haw.*, 2021 U.S. App. LEXIS 8571, *142, __ F.3d __, 2021 WL 1114180 (9th Cir. March 24, 2021) (en banc), Appellants filed a second motion for a preliminary injunction, on which the lower court did not render a decision. [ER596].

---

[13] Appellants' Second Amendment challenges survived Appellee's motion to dismiss [ER511]; Appellants thereafter filed their first amended complaint. [ER529].

At conclusion of fact and expert discovery, and on November 19, 2021, Appellee filed a motion for summary judgment. [ER596 at Doc. 56].

On December 2, 2021, by So Ordered stipulation of the parties, the proceedings were stayed pending the Supreme Court's ruling in *Bruen*. [ER596 at Doc. 58]. The stay was lifted on July 7, 2022. [ER596 at Doc. 59].

On August 8, 2022, Appellants' third motion for a preliminary injunction was filed [ER603 at Doc. 65], which was opposed by Appellee on September 30, 2022 [ER603 at Doc. 69]; Appellants' reply was filed on October 11, 2022. [ER603 at Doc. 73]. On September 27, 2022, Appellants filed a second amended complaint, which narrowed Appellants' challenge to Penal Code Sections 25850 and 26350.[14] [ER421]. Oral argument on Appellants' third preliminary injunction motion was held on November 4, 2022. [ER019].

By Order dated December 7, 2022, the lower court denied the preliminary injunction. [ER001]. Appellants timely filed a Notice of Interlocutory Appeal on January 3, 2023. [ER017].

## STANDARD OF REVIEW

This Court reviews a decision denying a preliminary injunction for abuse of discretion. *Duncan v. Becerra*, 742 F. App'x 218, 221 (9th Cir. 2018). The scope of

---

[14] Appellants' challenge to Penal Codes 26150 and 26155 were not incorporated into the second amended complaint. [ER421].

the Court's review is not to "determine the ultimate merits" but rather "determine only whether the district court correctly distilled the applicable rules of law and exercised permissible discretion in applying those rules to the facts at hand." *Duncan*, at 221 citing, *Fyock v. Sunnyvale*, 779 F.3d 991, 995 (9th Cir. 2015).

## SUMMARY OF THE ARGUMENT

The lower court abused its discretion in multiple ways when determining Appellants' motion for a preliminary injunction.

Appellants moved to preliminarily enjoin the enforcement of two criminal statutes: California Penal Code sections 25850 and 26350, which impose criminal penalties against ordinary people for the 'mere possession' of a handgun carried open and holstered for self-defense.

The lower court was required to apply the test for analyzing Second Amendment announced in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). Instead, the lower court improperly applied the public safety-interest balancing test flatly rejected by the *Bruen* Court, imposed an "alternate means" standard not permitted under the *Bruen* test, and failed to hold the State to its burden of demonstrating a historical analogue to justify its firearm regulations, among other errors.

Rather than decide whether Sections 25850 and 26350 violate the Second and Fourteenth Amendments, the lower court pivoted to the licensing statutes to justify

the enforcement of the criminal statutes. In so doing, the lower court mischaracterized the harms to Appellants (being banned from open carry) as mere inconvenience, finding that Appellants had the alternate option of applying for a *concealed* carry license and just give up their right to open carry. [E011].

I.     Appellants' constitutional challenge to California's open carry ban, is likely to succeed. California Penal Code Sections 25850 and 26350 criminalize conduct presumptively protected by the plain text of the Second Amendment - the right to bear arms - and this Nation has no historical tradition of criminalizing the mere possession of firearms in public for self-protection.

There is no National (or Californian) historical tradition of requiring a license to open carry and, to the extent that the Supreme Court allows licensing schemes to continue, *Bruen* confirmed that discretionary may issue schemes violate the Second Amendment. *Bruen*, at 2162.

Even if California converted to a 'shall issue' regime with objective factors, open carry is banned; no application exists for an open carry license and not one open carry license has been issued since the Right was banned in 2012.

II.    The district court erred when balancing the Appellants' interest in engaging in protected conduct and the government's interests in public safety. The Supreme Court has *thrice* rejected such improper 'interest balancing' in Second Amendment challenges. The *Bruen* Court reconfirmed that that the "Second

Amendment is the very product of an interest balancing by the people" and it "surely elevates *above all other interests* the right of law-abiding, responsible citizens to use arms" for self-defense. *Bruen*, at 2131 quoting, *D.C. v. Heller*, 554 U.S. 570, 635(2008). "It is this balance - struck by the traditions of the American people - that demands our *unqualified deference*."[15] Public safety justifications in Second Amendment challenges were unequivocally rejected as "inconsistent with *Heller*'s historical approach and its rejection of means-end scrutiny." *Bruen*, at 2129.

The lower court abused its discretion by balancing the government's interests in public safety and crime prevention against Appellants' Second Amendment rights – the same 'interest balancing' rejected by the Supreme Court in *Heller, McDonald*, and *Bruen*.

III. Appellants will continue to suffer irreparable harm if Sections 25850 and 26350 are not enjoined. This Court has held, across a wide variety of constitutional provisions, that the unlawful infringement of a plaintiff's constitutional rights constitutes *per se* irreparable harm. Sections 25850 and 26350 inflict the irreparable and ongoing injury of banning Appellants' right to defend themselves and their families outside of their homes.

---

[15] *Bruen*, at 2131 (emphasis added).

**ARGUMENT**

This Court "review[s] a district court's decision to grant or deny a preliminary injunction for abuse of discretion," which entails reviewing "the district court's legal conclusions de novo and its factual findings for clear error." *Id.* at 941.

"Likelihood of success on the merits is a threshold inquiry and is the most important factor." *Environmental Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020).

Prior to *Bruen,* the courts in this Circuit applied a "tripartite binary test with a sliding scale and a reasonable fit" when determining whether to grant a preliminary injunction in Second Amendment cases. *Duncan v. Becerra*, 265 F. Supp. 3d 1106, 1117 (S.D. Cal. 2017), aff'd, 742 F. App'x 218 (9th Cir. 2018).

This "tripartite test" for Second Amendment challenges blended well with the *Winter* test, which requires a plaintiff to establish: (1) that he is likely to succeed on the merits; (2) likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (9th Cir. 2014). The two analyses were compatible because the "tripartite test" involved also involved a "balancing" test – the application of intermediate scrutiny, "judgment calls"[16], and tailoring a 'reasonable fit' between individual rights and California's

---

[16] *Duncan v. Becerra*, 742 F. App'x 218, 221 (9th Cir. 2018).

'interest in protecting public safety and preventing crime. *Duncan*, 265 F. Supp. 3d at 1120. But as discussed below, the "tripartite test" and means-end "interest balancing" were rejected by the Supreme Court in *Bruen* and improperly applied by the lower court.

## I. The Lower Court Erroneously Disregarded the Most Important Factor – Appellants' Likelihood of Success on the Merits

Likelihood of success on the merits is the most important factor in determining whether to grant a preliminary injunction. *Disney Enterprises, Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017). In assessing the merits of a Second Amendment challenge, courts are required to follow the test set forth in *Bruen*:

> "We reiterate that the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.
>
> The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'"

*Bruen*, at 2129–30, 2126 (citation omitted).

*Heller* confirmed that the right to 'bear arms' refers to the right to 'wear, bear, or carry ... *upon the person or in the clothing* or in a pocket, for the purpose ... of being armed and ready for offensive or defensive action in a case of conflict with another person….This definition of "bear" naturally encompasses public carry."

14

*Bruen*, at 2134 (emphasis added). Carrying a weapon "upon the person" (open carry) and "in the clothing or in a pocket" (concealed carry) are presumptively protected. Thus, at the time of the founding, as now, to "bear" meant to "carry." *Heller*, at 584.

Appellants carried their burden of showing that the plain text of the Second Amendment "presumptively guarantees"[17] and "protects…carrying handguns publicly for self-defense"; the burden then shifted to Appellee to demonstrate that Sections 25850 and 26350 are consistent with the Nation's historical tradition of firearm regulation. *Bruen*, at 2126.

Even under *Winter*, Appellee was required to show "a likelihood that [his] affirmative defense will succeed." *Disney*, at 856 quoting, *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1158 (9th Cir. 2007).

But Appellee failed to produce any Founding Era tradition of banning the open carriage of firearms, nor can he because no such tradition existed. Imposing criminal penalties for the 'mere carriage' of firearms in public for self-defense is repugnant to the Second Amendment right to 'bear Arms' and in direct conflict with *Heller*, *McDonald, Caetano,* and *Bruen.*[18]

> "As we explained in *Heller*, the 'textual elements' of the Second Amendment's operative clause - 'the right of the people to keep and bear Arms, shall not be infringed' – 'guarantee the individual right

---

[17] *Bruen*, at 2135.

[18] To be sure, if a 'proper cause' requirement for issuing a concealed carry license violates the Second Amendment [as in *Bruen*], criminalizing open carry is unquestionably unconstitutional.

to possess and carry weapons in case of confrontation.' 554 U.S. at 592, 128 S.Ct. 2783. *Heller* further confirmed that the right to 'bear arms' refers to the right to "wear, bear, or carry ... upon the person or in the clothing or in a pocket, for the purpose ... of being armed and ready for offensive or defensive action in a case of conflict with another person.' *Id.*, at 584, 128 S.Ct. 2783 (quoting *Muscarello v. United States*, 524 U.S. 125, 143, 118 S.Ct. 1911, 141 L.Ed.2d 111 (1998) (Ginsburg, J., dissenting); internal quotation marks omitted)."

*Bruen,* at 2134.

Nor was there any requirement in the Founding Era that ordinary citizens seek and obtain permission from the government prior to, or as a condition of, the open carriage of handguns. California itself was an unregulated open carry jurisdiction until 1967. Open carry licenses may be 'on the books' in California, but no such license has been issued since open carry was banned in 2012, nor is there any application form, process, or procedure for the issuance of a license. [see, n. 9 *supra*]. And because this Circuit holds that *concealed* carriage of a handgun is a 'privilege,' not a 'Right' protected by the Second Amendment[19], California's open carry ban leaves "the People" with no enforceable *Right* to bear arms for self-defense.[20]

---

[19] See, *Peruta v. County of San Diego*, 824 F3d 919, 939 (9th Cir 2016) (*Peruta II*) ("We therefore conclude that the Second Amendment right to keep and bear arms does not include, in any degree, the right of a member of the general public to carry concealed firearms in public."). *Peruta II* left open the question of whether open carry was protected by the scope of the Second Amendment.

[20] The Ninth Circuit's en banc decision in *Young v Hawaii*, holding that there is also no preexisting individual right to open carry – was abrogated, and vacated, by *Bruen*. See, 992 F.3d 765 (9th Cir. 2021), cert. granted, judgment vacated, No. 20-1639, 2022 WL 2347578 (U.S. June 30, 2022), abrogated by *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, No. 20-843, 2022 WL 2251305 (U.S. June 23, 2022).

Bypassing the "likelihood of success" factor, the lower court circumvented application of the *Bruen* test altogether:

> "It is not necessary to decide whether California's Penal Code restricts conduct within the Second Amendment's plain text under *Bruen* or whether the challenged Penal Code sections are within the nation's historical tradition of firearms regulation. Nor is it necessary to decide whether Baird and Gallardo would suffer irreparable harm if the court does not enter a preliminary injunction [because] they have not shown the balance of harms and public interest favor a preliminary injunction."

[EF010].

Disregarding the likelihood of success factor, the lower court evaded the *Bruen* test and the *Winter* requirement, effectively shielding Appellee from his legal burden of demonstrating a "likelihood that [his] affirmative defense will succeed" (under *Winter*) and that Sections 25850 and 26350 are "consistent with this Nation's historical traditions of firearm regulations" (under *Bruen*).

Because Appellants' conduct is protected by the plain text of the Second Amendment, they "must be deemed likely to prevail"[21] unless Appellee can demonstrate that California's statutes are consistent with the Founding Era historical traditions of firearm regulation, which he cannot.[22] Indeed, imposing criminal

---

[21] See, e.g., *Ashcroft v. Am. C.L. Union*, 542 U.S. 656, 666 (2004).

[22] "Only after the ratification of the Second Amendment in 1791 did public-carry restrictions proliferate." *Bruen*, 2120. Because public carry restrictions did not exist in the Founding Era, there is no 'historical tradition' in this Nation of criminalizing the open carriage of handguns by ordinary

sanctions against ordinary citizens for exercising a pre-existing right is an obvious violation of the Constitution.

> "It is settled by a long line of recent decisions of this Court that an ordinance which, like this one, makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official—as by requiring a permit or license which may be granted or withheld in the discretion of such official—is an unconstitutional censorship or prior restraint upon the enjoyment of those freedoms. *Staub v. City of Baxley*, 355 U.S. 313, 322, 78 S.Ct. 277, 282, 2 L.Ed.2d 302. And our decisions have made clear that a person faced with such an unconstitutional licensing law ]of free expression for which the law purports to require a license.

*Shuttlesworth v. City of Birmingham, Ala.*, 394 U.S. 147, 151 (1969) (internal quotation marks omitted).

## II. The Lower Court Abused its Discretion by Applying the *Thrice* Rejected "Interest Balancing" Forbidden in Second Amendment Challenges

Generally, the balancing of equities factor involves balancing the competing claims of injury and consideration of the effect on each party of the granting or withholding of the requested relief. *Winter*, at 24.

---

people, like Appellants; nor is there a Founding Era tradition of government-dictated modality of carry.

### A. *Bruen* Prohibits Interest Balancing in Second Amendment Challenges

'Balancing' tests, like the intermediate scrutiny tripartite test formerly applied in this Circuit, were affirmatively rejected by *Heller*[23], *McDonald*[24], and *Bruen*.

> "But while that judicial deference to legislative interest balancing is understandable—and, elsewhere, appropriate—it is not deference that the Constitution demands here. The Second Amendment 'is the very product of an interest balancing by the people' and it 'surely elevates above all other interests the right of law-abiding, responsible citizens to use arms' for self-defense. It is this balance—struck by the traditions of the American people—that demands our unqualified deference."

*Bruen*, at 2131 (citation omitted).

The *Bruen* test is unequivocal: conduct that is covered by the plain text of the Second Amendment is 'presumptively protected' and "[where] later history contradicts what the text says, the text controls. *Bruen*, at 2137.

Interest balancing is not part of the *Bruen* test, and the lower courts are without any authority to alter it. See, *Am. Tradition P'ship, Inc. v. Bullock*, 565 U.S. 1187

---

[23]"We know of no other enumerated constitutional right whose core protection has been subjected to a freestanding 'interest-balancing' approach. The very enumeration of the right takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is really worth insisting upon. A constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all. Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope too broad." *D.C. v. Heller*, 554 U.S. 570, 634–35 (2008).

[24] "In *Heller*, however, we expressly rejected the argument that the scope of the Second Amendment right should be determined by judicial interest balancing…and this Court decades ago abandoned 'the notion that the Fourteenth Amendment applies to the States only a watered-down, subjective version of the individual guarantees of the Bill of Rights'." *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 785–86 (2010) (internal citations omitted).

(2012) (lower courts are bound to follow the decisions of the Supreme Court until they are withdrawn or modified).

### B. The Lower Court Abused its Discretion by Balancing Appellants' Second Amendment Rights Against the Government's Interest in Public Safety and Crime Prevention

Declining to assess the likelihood of Appellants' success on the merits, which was more than substantial, the lower court proceeded to "balance the equities" of the parties. In doing so, the court gave no consideration to *Bruen*, reasoning that, because *Bruen* was before the Supreme Court on appeal from a motion to dismiss, and not a preliminary injunction, the *Bruen* test did not apply in the absence of some "Ninth Circuit or Supreme Court authority allocating the parties' burdens for preliminary injunction motions..." [ER007-008].[25]

 The Supreme Court set one standard for all Second Amendment challenges, and interest balancing is never part of the equation. Full stop.

The lower court abused its discretion by applying the very interest balancing rejected by *Heller, McDonald,* and *Bruen* and denied Appellants' motion in favor of Appellee's "public safety" and "crime prevention" interests. The lower court credited Appellee's expert, former police chief Kim Raney – who never served in an open carry jurisdiction – but offered speculation that "the restrictions on the open

---

[25] The lower court stayed the proceedings below, which included staying its determination of Appellants' second injunction motion, until *Bruen* was decided – then failed to follow its mandate.

carry of firearms in California have been critical to the safety of law-enforcement officers, our communities, and those people who would want to openly carry firearms in public." [ER012]. The lower court did not even consider the testimony of Appellants' expert Chuck Haggard – who served in law enforcement in an open carry jurisdiction before, during, and after Kansas' transition from banning open carry to Constitutional permitless carry – attesting that banning open carry does not enhance public safety to any extent. [ER242-246].

The court went on to improperly rely on "academic research showing violent crime, property crime, and murder rates are higher in states that impose fewer restrictions on firearm carrying in public" complaining that Appellants "offered no countervailing evidence to show crime rates are the same or lower when firearms regulations are relaxed." [ER013].

Appellants properly argued that public safety concerns are improper considerations and "off the table" – not because Appellants believe them to be (which they do), but because the Supreme Court has, on multiple occasions, rejected "public safety" justifications and means-end scrutiny in Second Amendment challenges. [ER029].

Even the lower court acknowledged that "public safety" was an improper consideration under *Bruen* and would not be admissible at trial:

"Under *Bruen*, the state could not defend its laws at trial by arguing they advance a compelling state interest in public safety. See id. at 2127 (rejecting "means-end scrutiny in the Second Amendment context")."

[ER013].

Because the "burdens at the preliminary injunction stage track the burdens at trial [*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006)] the lower court abused its discretion by engaging in improper interest balancing weighing Appellants' constitutional rights against the government's interest in public safety and crime prevention.

### C. If Balancing Under *Winter* is Applicable in Second Amendment Cases, the Equities Still Tip in Appellants' Favor

To the extent that balancing the equities under *Winter* may be accomplished in a manner consistent with *Bruen*, assuming any balancing is consistent with *Bruen*, the equities would nevertheless tip in Appellants' favor.

Without an injunction, Appellants will continue to be banned from exercising the presumptively protected Right to carry a handgun in public for self-defense.[26] Granting an injunction will restore Appellants' Right to carry a handgun in public for self-defense.

---

[26] Concealed carry is not recognized as a Second Amendment right in this Circuit [see, *Peruta II* supra], California's licensing scheme is 'may issue' and vests unbridled discretion in the licensing authority, no open carry licenses are issued nor is there an application or process for either applying or issuing an open carry license and, most importantly, there is no Founding Era historical tradition of either licensing or banning open carry for self-defense.

As for Appellee, this Circuit has held that the "government suffers no harm from an injunction that merely ends unconstitutional practices and/or ensures that constitutional standards are implemented." *Doe v. Kelly*, 878 F.3d 710, 718 (9th Cir. 2017) citing, *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013).

"As with irreparable injury, when a plaintiff establishes 'a likelihood that Defendants' policy violates the U.S. Constitution, Appellants have also established that both the public interest and the balance of the equities favor a preliminary injunction.'" *J.S.R. by & through J.S.G. v. Sessions*, 330 F. Supp. 3d 731, 743 (D. Conn. 2018) citing, *Ms. L. v. U.S Immigr. & Customs Enf't ("ICE")*, 310 F. Supp. 3d 1133, 1146 (S.D. Cal. 2018), modified, 330 F.R.D. 284 (S.D. Cal. 2019), and enforcement granted in part, denied in part sub nom. *Ms. L. v. U.S. Immigr. & Customs Enf't*, 415 F. Supp. 3d 980 (S.D. Cal. 2020) quoting, *Arizona Dream Act Coalition*, 757 F.3d 1053, 1069 (9th Cir. 2014) (balance of equities favors preventing the violation of a party's constitutional rights.

## III. Appellants Will Continue to Suffer Irreparable Harm

"It is well established in this Circuit that the deprivation of constitutional rights unquestionably constitutes irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion)); see also, *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017).

California's open carry ban, implemented through the enforcement of Sections 25850 and 26350, deprives Appellants of their presumptively protected right to carry a handgun for self-defense, which "unquestionably constitutes irreparable injury." Absent an injunction, Appellants will continue to suffer irreparable harm.

## IV.  The Public Interest is Served by Enjoining Sections 25850 and 26350

This Circuit had held multiple times that "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, at 1002 (9th Cir. 2012) quoting, *Sammartano v. First Judicial District Court*, 303 F.3d 959 (9th Cir.2002); *G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir.1994). The Ninth Circuit has applied this principle in the context of other constitutional rights, see, e.g., *Melendres*, 695 F.3d at 1002 (Fourth Amendment); *Index Newspapers LLC v. United States Marshals Serv.*, 977 F.3d 817 (9th Cir. 2020) (First Amendment); *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) (immigration removal proceedings); and *Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997) (Equal Protection).

And because "the constitutional right to bear arms in public for self-defense is "not a second-class right, subject to an entirely different body of rules than the

other Bill of Rights guarantees"[27], this principle should apply equally here as well. Enjoining Penal Codes 25850 and 26350 is in the public's interest.

## V. The Lower Court Abused Its Discretion By Implementing an "Alternate Manner of Self-Defense" Factor

*Heller* rejected "alternative means" for self-defense as an improper inquiry in Second Amendment challenges. "It is no answer to say, as petitioners do, that it is permissible to ban the possession of handguns so long as the possession of other firearms (i.e., long guns) is allowed." *Heller*, at 629. The question is whether the law bans conduct protected by the plain text of the Second Amendment - regardless of whether alternatives exist. See, e.g, *Friedman v. City of Highland Park, Ill.*, 136 S.Ct. 447, 448 (2015) (Thomas, J., joined by Scalia, J., dissenting from denial of certiorari).

The lower court abused its discretion by interjecting an "alternate means" factor into Second Amendment analysis. Instead of addressing the harms and penalties suffered by Appellants by the enforcement of Sections 25850 and 26350, the court pointed to California's 'may-issue' licensing statute as an alternative means for Appellants to carry a handgun, incorrectly referring to the scheme as 'objective.' [ER011-012]. The only consideration under the *Bruen* test is whether the regulated

---

[27] *Bruen,* at 2156 quoting, *McDonald*, at 780.

conduct is protected by the Second Amendment, not whether some other means of exercising those rights exists.

## CONCLUSION

The lower court Order denying Appellants' preliminary injunction should be reversed and remanded for proceedings consistent with the arguments made herein.

Dated: January 31, 2023

THE BELLANTONI LAW FIRM, PLLC
*Attorneys for Plaintiffs-Appellants*

By: *Amy L. Bellantoni*
_____
Amy L. Bellantoni
2 Overhill Road, Suite 400
Scarsdale, New York 10583
(914) 367-0090 (t)
(888) 763-9761 (f)
abell@bellantoni-law.com

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)**   | 23-15016

I am the attorney or self-represented party.

**This brief contains**   | 5910 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

    ☐ it is a joint brief submitted by separately represented parties.
    ☐ a party or parties are filing a single brief in response to multiple briefs.
    ☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated [ ].

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature**   | s/ Amy L. Bellantoni    **Date** | 1/31/2023

*(use "*s/[typed name]*" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**             *Rev. 12/01/22*

**STATUTORY ADDENDUM**

# TABLE OF CONTENTS

**Page**

U.S. CONST. amend. II. ............................................................Addendum 1

U.S. CONST. amend. XIV .........................................................Addendum 1

CAL. PENAL CODE § 25850 .....................................................Addendum 1

CAL. PENAL CODE § 25850 EXEMPTIONS ....................................Addendum 3

CAL. PENAL CODE § 26350 .......................................................Addendum 8

CAL. PENAL CODE § 26350 EXEMPTIONS ....................................Addendum 9

CAL. PENAL CODE § 26150 .......................................................Addendum 15

CAL. PENAL CODE § 26155 .......................................................Addendum 16

CAL. PENAL CODE § 26175 .......................................................Addendum 17

CAL. PENAL CODE § 26225 .......................................................Addendum 19

## U.S. CONST. amend. II.

A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.

## U.S. CONST. amend. XIV.
### (in pertinent part)

No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal
protection of the laws. U.S. Const. amend. XIV.

## CAL. PENAL CODE § 25850

(a) A person is guilty of carrying a loaded firearm when the person carries a loaded firearm on the person or in a vehicle while in any public place or on any public street in an incorporated city or in any public place or on any public street in a prohibited area of unincorporated territory.

(b) In order to determine whether or not a firearm is loaded for the purpose of enforcing this section, peace officers are authorized to examine any firearm carried by anyone on the person or in a vehicle while in any public place or on any public street in an incorporated city or prohibited area of an unincorporated territory. Refusal to allow a peace officer to inspect a firearm pursuant to this section constitutes probable cause for arrest for violation of this section.

(c) Carrying a loaded firearm in violation of this section is punishable, as follows:

(1) Where the person previously has been convicted of any felony, or of any crime made punishable by a provision listed in Section 16580, as a felony.

(2) Where the firearm is stolen and the person knew or had reasonable cause to believe that it was stolen, as a felony.

(3) Where the person is an active participant in a criminal street gang, as defined in subdivision (a) of Section 186.22, under the Street Terrorism

**ADDENDUM 1**

Enforcement and Prevention Act (Chapter 11 (commencing with Section 186.20) of Title 7 of Part 1), as a felony.

(4) Where the person is not in lawful possession of the firearm, or is within a class of persons prohibited from possessing or acquiring a firearm pursuant to Chapter 2 (commencing with Section 29800) or Chapter 3 (commencing with Section 29900) of Division 9 of this title, or Section 8100 or 8103 of the Welfare and Institutions Code, as a felony.

(5) Where the person has been convicted of a crime against a person or property, or of a narcotics or dangerous drug violation, by imprisonment pursuant to subdivision (h) of Section 1170, or by imprisonment in a county jail not to exceed one year, by a fine not to exceed one thousand dollars ($1,000), or by both that imprisonment and fine.

(6) Where the person is not listed with the Department of Justice pursuant to Section 11106 as the registered owner of the handgun, by imprisonment pursuant to subdivision (h) of Section 1170, or by imprisonment in a county jail not to exceed one year, or by a fine not to exceed one thousand dollars ($1,000), or both that fine and imprisonment.

(7) In all cases other than those specified in paragraphs (1) to (6), inclusive, as a misdemeanor, punishable by imprisonment in a county jail not to exceed one year, by a fine not to exceed one thousand dollars ($1,000), or by both that imprisonment and fine.

(d)

(1) Every person convicted under this section who has previously been convicted of an offense enumerated in Section 23515, or of any crime made punishable under a provision listed in Section 16580, shall serve a term of at least three months in a county jail, or, if granted probation or if the execution or imposition of sentence is suspended, it shall be a condition thereof that the person be imprisoned for a period of at least three months.

(2) The court shall apply the three-month minimum sentence except in unusual cases where the interests of justice would best be served by granting probation or suspending the imposition or execution of sentence without the minimum imprisonment required in this section or by granting probation or

**ADDENDUM 2**

suspending the imposition or execution of sentence with conditions other than those set forth in this section, in which case, the court shall specify on the record and shall enter on the minutes the circumstances indicating that the interests of justice would best be served by that disposition.

(e) A violation of this section that is punished by imprisonment in a county jail not exceeding one year shall not constitute a conviction of a crime punishable by imprisonment for a term exceeding one year for the purposes of determining federal firearms eligibility under Section 922(g)(1) of Title 18 of the United States Code.

(f) Nothing in this section, or in Article 3 (commencing with Section 25900) or Article 4 (commencing with Section 26000), shall preclude prosecution under Chapter 2 (commencing with Section 29800) or Chapter 3 (commencing with Section 29900) of Division 9 of this title, Section 8100 or 8103 of the Welfare and Institutions Code, or any other law with a greater penalty than this section.

(g) Notwithstanding paragraphs (2) and (3) of subdivision (a) of Section 836, a peace officer may make an arrest without a warrant:

> (1) When the person arrested has violated this section, although not in the officer's presence.

> (2) Whenever the officer has reasonable cause to believe that the person to be arrested has violated this section, whether or not this section has, in fact, been violated.

(h) A peace officer may arrest a person for a violation of paragraph (6) of subdivision (c), if the peace officer has probable cause to believe that the person is carrying a handgun in violation of this section and that person is not listed with the Department of Justice pursuant to paragraph (1) of subdivision (c) of Section 11106 as the registered owner of that handgun.

(Amended by Stats. 2011, Ch. 15, Sec. 544. (AB 109) Effective April 4, 2011. Amending action operative October 1, 2011, by Sec. 636 of Ch. 15, as amended by Stats. 2011, Ch. 39, Sec. 68. Section operative January 1, 2012, pursuant to Stats. 2010, Ch. 711, Sec. 10.)

**ADDENDUM 3**

## CAL. PENAL CODE § 25850 EXEMPTIONS

**26000.** Section 25850 does not apply to members of the military forces of this state or of the United States engaged in the performance of their duties. (Added by Stats. 2010, Ch. 711, Sec. 6. (SB 1080) Effective January 1, 2011. Operative January 1, 2012, by Sec. 10 of Ch. 711.)

**26005**. Section 25850 does not apply to either of the following: (a) Persons who are using target ranges for the purpose of practice shooting with a firearm. (b) Members of shooting clubs while hunting on the premises of those clubs. (Added by Stats. 2010, Ch. 711, Sec. 6. (SB 1080) Effective January 1, 2011. Operative January 1, 2012, by Sec. 10 of Ch. 711.)

**26010**. Section 25850 does not apply to the carrying of any handgun by any person as authorized pursuant to Chapter 4 (commencing with Section 26150) of Division 5. (Added by Stats. 2010, Ch. 711, Sec. 6. (SB 1080) Effective January 1, 2011. Operative January 1, 2012, by Sec. 10 of Ch. 711.)

**26015.** Section 25850 does not apply to any armored vehicle guard, as defined in Section 7582.1 of the Business and Professions Code, if either of the following conditions is satisfied: (a) The guard was hired prior to January 1, 1977, and is acting within the course and scope of employment. (b) The guard was hired on or after January 1, 1977, has received a firearms qualification card from the Department of Consumer Affairs, and is acting within the course and scope of employment. (Added by Stats. 2010, Ch. 711, Sec. 6. (SB 1080) Effective January 1, 2011. Operative January 1, 2012, by Sec. 10 of Ch. 711.)

**26020**. (a) Upon approval of the sheriff of the county in which the retiree resides, Section 25850 does not apply to any honorably retired federal officer or agent of any federal law enforcement agency, including, but not limited to, the Federal Bureau of Investigation, the United States Secret Service, the United States Customs Service, the federal Bureau of Alcohol, Tobacco, Firearms and Explosives, the Federal Bureau of Narcotics, the United States Drug Enforcement Administration, the United States Border Patrol, and any officer or agent of the Internal Revenue Service who was authorized to carry weapons while on duty, who was assigned to duty within the state for a period of not less than one year, or who retired from active service in the state. (b) A retired federal officer or agent shall provide the sheriff with certification from the agency from which the officer or agent retired certifying that person's service in the state, stating the nature of that person's retirement, and indicating the agency's concurrence that the retired federal officer or agent should

**ADDENDUM 4**

be accorded the privilege of carrying a loaded firearm. (c) Upon approval, the sheriff shall issue a permit to the retired federal officer or agent indicating that the retiree may carry a loaded firearm in accordance with this section. The permit shall be valid for a period not exceeding five years, shall be carried by the retiree while carrying a loaded firearm, and may be revoked for good cause. (d) The sheriff of the county in which the retired federal officer or agent resides may require recertification prior to a permit renewal, and may suspend the privilege for cause. The sheriff may charge a fee necessary to cover any reasonable expenses incurred by the county. (Amended by Stats. 2011, Ch. 296, Sec. 231. (AB 1023) Effective January 1, 2012.)

**26025.** Section 25850 does not apply to any of the following who have completed a regular course in firearms training approved by the Commission on Peace Officer Standards and Training: (a) Patrol special police officers appointed by the police commission of any city, county, or city and county under the express terms of its charter who also, under the express terms of the charter, satisfy all of the following requirements: (1) They are subject to suspension or dismissal after a hearing on charges duly filed with the commission after a fair and impartial trial. (2) They are not less than 18 years of age or more than 40 years of age. (3) They possess physical qualifications prescribed by the commission. (4) They are designated by the police commission as the owners of a certain beat or territory as may be fixed from time to time by the police commission. (b) Animal control officers or zookeepers, regularly compensated in that capacity by a governmental agency, when carrying weapons while acting in the course and scope of their employment and when designated by a local ordinance or, if the governmental agency is not authorized to act by ordinance, by a resolution, either individually or by class, to carry the weapons. (c) Persons who are authorized to carry the weapons pursuant to Section 14502 of the Corporations Code, while actually engaged in the performance of their duties pursuant to that section. (d) Harbor police officers designated pursuant to Section 663.5 of the Harbors and Navigation Code. (Added by Stats. 2010, Ch. 711, Sec. 6. (SB 1080) Effective January 1, 2011. Operative January 1, 2012, by Sec. 10 of Ch. 711.)

**26030**. (a) Section 25850 does not apply to any of the following who have been issued a certificate pursuant to subdivision (d): (1) Guards or messengers of common carriers, banks, and other financial institutions, while actually employed in and about the shipment, transportation, or delivery of any money, treasure, bullion, bonds, or other thing of value within this state. (2) Guards of contract carriers operating armored vehicles pursuant to California Highway Patrol and Public Utilities Commission authority, if they were hired prior to January 1, 1977. (3) Guards of

contract carriers operating armored vehicles pursuant to California Highway Patrol and Public Utilities Commission authority, if they were hired on or after January 1, 1977, and they have completed a course in the carrying and use of firearms that meets the standards prescribed by the Department of Consumer Affairs. (4) Private investigators licensed pursuant to Chapter 11.3 (commencing with Section 7512) of Division 3 of the Business and Professions Code, while acting within the course and scope of their employment. (5) Uniformed employees of private investigators licensed pursuant to Chapter 11.3 (commencing with Section 7512) of Division 3 of the Business and Professions Code, while acting within the course and scope of their employment. (6) Private patrol operators licensed pursuant to Chapter 11.5 (commencing with Section 7580) of Division 3 of the Business and Professions Code, while acting within the course and scope of their employment. (7) Uniformed employees of private patrol operators licensed pursuant to Chapter 11.5 (commencing with Section 7580) of Division 3 of the Business and Professions Code, while acting within the course and scope of their employment. (8) Alarm company operators licensed pursuant to Chapter 11.6 (commencing with Section 7590) of Division 3 of the Business and Professions Code, while acting within the course and scope of their employment. (9) Uniformed security guards or night watch persons employed by any public agency, while acting within the scope and course of their employment. (10) Uniformed security guards, regularly employed and compensated in that capacity by persons engaged in any lawful business, and uniformed alarm agents employed by an alarm company operator, while actually engaged in protecting and preserving the property of their employers, or on duty or en route to or from their residences or their places of employment, and security guards and alarm agents en route to or from their residences or employer-required range training. (b) Nothing in paragraph (10) of subdivision (a) shall be construed to prohibit cities and counties from enacting ordinances requiring alarm agents to register their names. (c) A certificate under this section shall not be required of any person who is a peace officer, who has completed all training required by law for the exercise of the person's power as a peace officer, and who is employed while not on duty as a peace officer. (d) The Department of Consumer Affairs may issue a certificate to any person referred to in this section, upon notification by the school where the course was completed, that the person has successfully completed a course in the carrying and use of firearms and a course of training in the exercise of the powers of arrest, which meet the standards prescribed by the department pursuant to Section 7583.5 of the Business and Professions Code. (Added by Stats. 2010, Ch.

711, Sec. 6. (SB 1080) Effective January 1, 2011. Operative January 1, 2012, by Sec. 10 of Ch. 711.)

**26035.** Nothing in Section 25850 shall prevent any person engaged in any lawful business, including a nonprofit organization, or any officer, employee, or agent authorized by that person for lawful purposes connected with that business, from having a loaded firearm within the person's place of business, or any person in lawful possession of private property from having a loaded firearm on that property. (Added by Stats. 2010, Ch. 711, Sec. 6. (SB 1080) Effective January 1, 2011. Operative January 1, 2012, by Sec. 10 of Ch. 711.)

**26040**. Nothing in Section 25850 shall prevent any person from carrying a loaded firearm in an area within an incorporated city while engaged in hunting, provided that the hunting at that place and time is not prohibited by the city council. (Added by Stats. 2010, Ch. 711, Sec. 6. (SB 1080) Effective January 1, 2011. Operative January 1, 2012, by Sec. 10 of Ch. 711.)

**26045.** (a) Nothing in Section 25850 is intended to preclude the carrying of any loaded firearm, under circumstances where it would otherwise be lawful, by a person who reasonably believes that any person or the property of any person is in immediate, grave danger and that the carrying of the weapon is necessary for the preservation of that person or property. (b) A violation of Section 25850 is justifiable when a person who possesses a firearm reasonably believes that person is in grave danger because of circumstances forming the basis of a current restraining order issued by a court against another person who has been found to pose a threat to the life or safety of the person who possesses the firearm. This subdivision may not apply when the circumstances involve a mutual restraining order issued pursuant to Division 10 (commencing with Section 6200) of the Family Code absent a factual finding of a specific threat to the person's life or safety. It is not the intent of the Legislature to limit, restrict, or narrow the application of current statutory or judicial authority to apply this or other justifications to a defendant charged with violating Section 25850 or committing another similar offense. Upon trial for violating Section 25850, the trier of fact shall determine whether the defendant was acting out of a reasonable belief that the defendant was in grave danger. (c) As used in this section, "immediate" means the brief interval before and after the local law enforcement agency, when reasonably possible, has been notified of the danger and before the arrival of its assistance. (Amended by Stats. 2018, Ch. 185, Sec. 7. (AB 2176) Effective January 1, 2019.)

**ADDENDUM 7**

**26050**. Nothing in Section 25850 is intended to preclude the carrying of a loaded firearm by any person while engaged in the act of making or attempting to make a lawful arrest. (Added by Stats. 2010, Ch. 711, Sec. 6. (SB 1080) Effective January 1, 2011. Operative January 1, 2012, by Sec. 10 of Ch. 711.)

**26055**. Nothing in Section 25850 shall prevent any person from having a loaded weapon, if it is otherwise lawful, at the person's place of residence, including any temporary residence or campsite. (Added by Stats. 2010, Ch. 711, Sec. 6. (SB 1080) Effective January 1, 2011. Operative January 1, 2012, by Sec. 10 of Ch. 711.)

**26060**. Nothing in Section 25850 shall prevent any person from storing aboard any vessel or aircraft any loaded or unloaded rocket, rocket propelled projectile launcher, or similar device designed primarily for emergency or distress signaling purposes, or from possessing that type of a device while in a permitted hunting area or traveling to or from a permitted hunting area and carrying a valid California permit or license to hunt. (Added by Stats. 2010, Ch. 711, Sec. 6. (SB 1080) Effective January 1, 2011. Operative January 1, 2012, by Sec. 10 of Ch. 711.)

## CAL. PENAL CODE § 26350

(a) (1) A person is guilty of openly carrying an unloaded handgun when that person carries upon his or her person an exposed and unloaded handgun outside a vehicle while in or on any of the following:

    (A) A public place or public street in an incorporated city or city and county.

    (B) A public street in a prohibited area of an unincorporated area of a county or city and county.

    (C) A public place in a prohibited area of a county or city and county.

(2) A person is guilty of openly carrying an unloaded handgun when that person carries an exposed and unloaded handgun inside or on a vehicle, whether or not on his or her person, while in or on any of the following:

    (A) A public place or public street in an incorporated city or city and county.

    (B) A public street in a prohibited area of an unincorporated area of a county or city and county.

    (C) A public place in a prohibited area of a county or city and county.

(b) (1) Except as specified in paragraph (2), a violation of this section is a misdemeanor.

(2) A violation of subparagraph (A) of paragraph (1) of subdivision (a) is punishable by imprisonment in a county jail not exceeding one year, or by a fine not to exceed one thousand dollars ($1,000), or by both that fine and imprisonment, if both of the following conditions exist:

> (A) The handgun and unexpended ammunition capable of being discharged from that handgun are in the immediate possession of that person.

> (B) The person is not in lawful possession of that handgun.

(c) (1) Nothing in this section shall preclude prosecution under Chapter 2 (commencing with Section 29800) or Chapter 3 (commencing with Section 29900) of Division 9, Section 8100 or 8103 of the Welfare and Institutions Code, or any other law with a penalty greater than is set forth in this section.

(2) The provisions of this section are cumulative and shall not be construed as restricting the application of any other law. However, an act or omission punishable in different ways by different provisions of law shall not be punished under more than one provision.

(d) Notwithstanding the fact that the term "an unloaded handgun" is used in this section, each handgun shall constitute a distinct and separate offense under this section.

(Added by Stats. 2011, Ch. 725, Sec. 14. (AB 144) Effective January 1, 2012.)

## CAL. PENAL CODE § 26350 EXEMPTIONS

**26351**. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun by any peace officer or any honorably retired peace officer if that officer may carry a concealed firearm pursuant to Article 2 (commencing with Section 25450) of Chapter 2, or a loaded firearm pursuant to Article 3 (commencing with Section 25900) of Chapter 3. (Added by Stats. 2011, Ch. 725, Sec. 14. (AB 144) Effective January 1, 2012.)

**26362**. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun by any person to the extent that person may openly carry a loaded handgun

pursuant to Article 4 (commencing with Section 26000) of Chapter 3. (Added by Stats. 2011, Ch. 725, Sec. 14. (AB 144) Effective January 1, 2012.)

**26363**. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun as merchandise by a person who is engaged in the business of manufacturing, importing, wholesaling, repairing, or dealing in firearms and who is licensed to engage in that business, or the authorized representative or authorized agent of that person, while engaged in the lawful course of the business. (Added by Stats. 2011, Ch. 725, Sec. 14. (AB 144) Effective January 1, 2012.)

**26364**. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun by a duly authorized military or civil organization, or the members thereof, while parading or while rehearsing or practicing parading, when at the meeting place of the organization. (Added by Stats. 2011, Ch. 725, Sec. 14. (AB 144) Effective January 1, 2012.)

**26365**. Paragraph (1) of subdivision (a) of Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun by a member of any club or organization organized for the purpose of practicing shooting at targets upon established target ranges, whether public or private, while the members are using handguns upon the target ranges or incident to the use of a handgun at that target range. (Added by Stats. 2011, Ch. 725, Sec. 14. (AB 144) Effective January 1, 2012.)

**26366**. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun by a licensed hunter while engaged in hunting or while transporting that handgun when going to or returning from that hunting expedition. (Added by Stats. 2011, Ch. 725, Sec. 14. (AB 144) Effective January 1, 2012.)

**26366.5**. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun by a licensed hunter while actually engaged in training a dog for the purpose of using the dog in hunting that is not prohibited by law, or while transporting the firearm while going to or returning from that training. (Added by Stats. 2012, Ch. 700, Sec. 9. (AB 1527) Effective January 1, 2013.)

**26367**. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun incident to transportation of a handgun by a person operating a licensed common carrier, or by an authorized agent or employee thereof, when transported in conformance with applicable federal law. (Added by Stats. 2011, Ch. 725, Sec. 14. (AB 144) Effective January 1, 2012.)

**ADDENDUM 10**

**26368**. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun by a member of an organization chartered by the Congress of the United States or a nonprofit mutual or public benefit corporation organized and recognized as a nonprofit tax-exempt organization by the Internal Revenue Service while on official parade duty or ceremonial occasions of that organization or while rehearsing or practicing for official parade duty or ceremonial occasions. (Added by Stats. 2011, Ch. 725, Sec. 14. (AB 144) Effective January 1, 2012.)

**26369**. Paragraph (1) of subdivision (a) of Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun within a gun show conducted pursuant to Article 1 (commencing with Section 27200) and Article 2 (commencing with Section 27300) of Chapter 3 of Division 6. (Added by Stats. 2011, Ch. 725, Sec. 14. (AB 144) Effective January 1, 2012.)

**26370**. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun within a school zone, as defined in Section 626.9, if that carrying is not prohibited by Section 626.9. (Amended by Stats. 2017, Ch. 779, Sec. 2. (AB 424) Effective January 1, 2018.)

**26371.** Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun when in accordance with the provisions of Section 171b. (Added by Stats. 2011, Ch. 725, Sec. 14. (AB 144) Effective January 1, 2012.)

**26372**. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun by any person while engaged in the act of making or attempting to make a lawful arrest. (Added by Stats. 2011, Ch. 725, Sec. 14. (AB 144) Effective January 1, 2012.)

**26373.** Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun incident to loaning, selling, or transferring that handgun in accordance with Article 1 (commencing with Section 27500) of Chapter 4 of Division 6, or in accordance with any of the exemptions from Section 27545, so long as that handgun is possessed within private property and the possession and carrying is with the permission of the owner or lessee of that private property. (Added by Stats. 2011, Ch. 725, Sec. 14. (AB 144) Effective January 1, 2012.)

**26374**. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun by a person engaged in firearms-related activities, while on the premises of a fixed place of business that is licensed to conduct and conducts, as a regular course of its business, activities related to the sale, making, repair, transfer, pawn, or the

use of firearms, or related to firearms training. (Added by Stats. 2011, Ch. 725, Sec. 14. (AB 144) Effective January 1, 2012.)

**26375.** Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun by an authorized participant in, or an authorized employee or agent of a supplier of firearms for, a motion picture, television or video production, or entertainment event, when the participant lawfully uses the handgun as part of that production or event, as part of rehearsing or practicing for participation in that production or event, or while the participant or authorized employee or agent is at that production or event, or rehearsal or practice for that production or event. (Added by Stats. 2011, Ch. 725, Sec. 14. (AB 144) Effective January 1, 2012.)

**26376**. Paragraph (1) of subdivision (a) of Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun incident to obtaining an identification number or mark assigned for that handgun from the Department of Justice pursuant to Section 23910. (Added by Stats. 2011, Ch. 725, Sec. 14. (AB 144) Effective January 1, 2012.)

**26377**. Paragraph (1) of subdivision (a) of Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun at any established target range, whether public or private, while the person is using the handgun upon the target range. (Added by Stats. 2011, Ch. 725, Sec. 14. (AB 144) Effective January 1, 2012.)

**26378**. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun by a person when that person is summoned by a peace officer to assist in making arrests or preserving the peace, while the person is actually engaged in assisting that officer. (Added by Stats. 2011, Ch. 725, Sec. 14. (AB 144) Effective January 1, 2012.)

**26379**. Paragraph (1) of subdivision (a) of Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun incident to any of the following: (a) Complying with Section 27560 or 27565, as it pertains to that handgun. (b) Section 28000, as it pertains to that handgun. (c) Section 27850 or 31725, as it pertains to that handgun. (d) Complying with Section 27870 or 27875, as it pertains to that handgun. (e) Complying with Section 26556, 27915, 27920, 27925, 29810, or 29830, as it pertains to that handgun. (f) Complying with paragraph (2) of subdivision (e) of Section 32000, as it pertains to that handgun. (g) Complying with Section 6389 of the Family Code, as it pertains to that handgun. (Amended by Stats. 2021, Ch. 685, Sec. 10. (SB 320) Effective January 1, 2022.)

**26380.** Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun incident to, and in the course and scope of, training of or by an individual to become a sworn peace officer as part of a course of study approved by the Commission on Peace Officer Standards and Training. (Added by Stats. 2011, Ch. 725, Sec. 14. (AB 144) Effective January 1, 2012.)

**26381**. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun incident to, and in the course and scope of, training of or by an individual to become licensed pursuant to Chapter 4 (commencing with Section 26150) as part of a course of study necessary or authorized by the person authorized to issue the license pursuant to that chapter. (Added by Stats. 2011, Ch. 725, Sec. 14. (AB 144) Effective January 1, 2012.)

**26382.** Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun incident to and at the request of a sheriff or chief or other head of a municipal police department. (Added by Stats. 2011, Ch. 725, Sec. 14. (AB 144) Effective January 1, 2012.)

**26383.** Paragraph (1) of subdivision (a) of Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun by a person when done within a place of business, a place of residence, or on private property, if done with the permission of a person who, by virtue of subdivision (a) of Section 25605, may carry openly an unloaded handgun within that place of business, place of residence, or on that private property owned or lawfully possessed by that person. (Added by Stats. 2011, Ch. 725, Sec. 14. (AB 144) Effective January 1, 2012.)

**26384.** Paragraph (1) of subdivision (a) of Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun if all of the following conditions are satisfied: (a) The open carrying occurs at an auction, raffle, or similar event of a nonprofit public benefit or mutual benefit corporation, at which firearms are auctioned or otherwise sold to fund the activities of that corporation or the local chapters of that corporation. (b) The unloaded handgun is to be auctioned or otherwise sold for that nonprofit public benefit or mutual benefit corporation. (c) The unloaded handgun is to be delivered by a person licensed pursuant to, and operating in accordance with, Sections 26700 to 26915, inclusive. (Amended by Stats. 2019, Ch. 738, Sec. 8. (SB 376) Effective January 1, 2020.)

**26385**. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun pursuant to paragraph (3) of subdivision (b) of Section 171c. (Added by Stats. 2011, Ch. 725, Sec. 14. (AB 144) Effective January 1, 2012.)

**ADDENDUM 13**

**26386**. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun pursuant to Section 171d. (Added by Stats. 2011, Ch. 725, Sec. 14. (AB 144) Effective January 1, 2012.)

**26387**. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun pursuant to subparagraph (F) of paragraph (1) subdivision (c) of Section 171.7. (Added by Stats. 2011, Ch. 725, Sec. 14. (AB 144) Effective January 1, 2012.)

**26388**. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun on publicly owned land, if the possession and use of a handgun is specifically permitted by the managing agency of the land and the person carrying that handgun is in lawful possession of that handgun. (Added by Stats. 2011, Ch. 725, Sec. 14. (AB 144) Effective January 1, 2012.)

**26389**. Section 26350 does not apply to, or affect, the carrying of an unloaded handgun if the handgun is carried either in the locked trunk of a motor vehicle or in a locked container. (Added by Stats. 2011, Ch. 725, Sec. 14. (AB 144) Effective January 1, 2012.)

**26390**. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun in any of the following circumstances: (a) The open carrying of an unloaded handgun that is regulated pursuant to Chapter 1 (commencing with Section 18710) of Division 5 of Title 2 by a person who holds a permit issued pursuant to Article 3 (commencing with Section 18900) of that chapter, if the carrying of that handgun is conducted in accordance with the terms and conditions of the permit. (b) The open carrying of an unloaded handgun that is regulated pursuant to Chapter 2 (commencing with Section 30500) of Division 10 by a person who holds a permit issued pursuant to Section 31005, if the carrying of that handgun is conducted in accordance with the terms and conditions of the permit. (c) The open carrying of an unloaded handgun that is regulated pursuant to Chapter 6 (commencing with Section 32610) of Division 10 by a person who holds a permit issued pursuant to Section 32650, if the carrying is conducted in accordance with the terms and conditions of the permit. (d) The open carrying of an unloaded handgun that is regulated pursuant to Article 2 (commencing with Section 33300) of Chapter 8 of Division 10 by a person who holds a permit issued pursuant to Section 33300, if the carrying of that handgun is conducted in accordance with the terms and conditions of the permit. (Added by Stats. 2012, Ch. 700, Sec. 10. (AB 1527) Effective January 1, 2013.)

**26391**. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun when done in accordance with the provisions of subdivision (d) of Section

171.5. (Added by Stats. 2012, Ch. 700, Sec. 11. (AB 1527) Effective January 1, 2013.)

**26392**. Paragraph (1) of subdivision (a) of Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun in any of the following circumstances: (a) By a person who finds that handgun, if the person is transporting the handgun in order to comply with Article 1 (commencing with Section 2080) of Chapter 4 of Title 6 of Part 4 of Division 3 of the Civil Code as it pertains to that firearm, and, if the person is transporting the firearm to a law enforcement agency, the person gives prior notice to the law enforcement agency that the person is transporting the handgun to the law enforcement agency. (b) By a person who finds that handgun and is transporting it to a law enforcement agency for disposition according to law, if the person gives prior notice to the law enforcement agency that the person is transporting the firearm to the law enforcement agency for disposition according to law. (c) By a person who took the firearm from a person who was committing a crime against the person and is transporting it to a law enforcement agency for disposition according to law, if the person gives prior notice to the law enforcement agency that the person is transporting that handgun to the law enforcement agency for disposition according to law. (Added by Stats. 2019, Ch. 110, Sec. 4. (AB 1292) Effective January 1, 2020.)

## CAL. PENAL CODE § 26150

(a) When a person applies for a license to carry a pistol, revolver, or other firearm capable of being concealed upon the person, the sheriff of a county may issue a license to that person upon proof of all of the following:

(1) The applicant is of good moral character.

(2) Good cause exists for issuance of the license.

(3) The applicant is a resident of the county or a city within the county, or the applicant's principal place of employment or business is in the county or a city within the county and the applicant spends a substantial period of time in that place of employment or business.

(4) The applicant has completed a course of training as described in Section 26165.

**ADDENDUM 15**

(b) The sheriff may issue a license under subdivision (a) in either of the following formats:

(1) A license to carry concealed a pistol, revolver, or other firearm capable of being concealed upon the person.

(2) Where the population of the county is less than 200,000 persons according to the most recent federal decennial census, a license to carry loaded and exposed in only that county a pistol, revolver, or other firearm capable of being concealed upon the person.

(c) (1) Nothing in this chapter shall preclude the sheriff of the county from entering into an agreement with the chief or other head of a municipal police department of a city to process all applications for licenses, renewals of licenses, or amendments to licenses pursuant to this chapter, in lieu of the sheriff.

(2) This subdivision shall only apply to applicants who reside within the city in which the chief or other head of the municipal police department has agreed to process applications for licenses, renewals of licenses, and amendments to licenses, pursuant to this chapter.

(Amended by Stats. 2015, Ch. 785, Sec. 2. (AB 1134) Effective January 1, 2016.)

## CAL. PENAL CODE § 26155

(a) When a person applies for a license to carry a pistol, revolver, or other firearm capable of being concealed upon the person, the chief or other head of a municipal police department of any city or city and county may issue a license to that person upon proof of all of the following:

(1) The applicant is of good moral character.

(2) Good cause exists for issuance of the license.

(3) The applicant is a resident of that city.

(4) The applicant has completed a course of training as described in Section 26165.

(b) The chief or other head of a municipal police department may issue a license under subdivision (a) in either of the following formats:

**ADDENDUM 16**

(1) A license to carry concealed a pistol, revolver, or other firearm capable of being concealed upon the person.

(2) Where the population of the county in which the city is located is less than 200,000 persons according to the most recent federal decennial census, a license to carry loaded and exposed in only that county a pistol, revolver, or other firearm capable of being concealed upon the person.

(c) Nothing in this chapter shall preclude the chief or other head of a municipal police department of any city from entering an agreement with the sheriff of the county in which the city is located for the sheriff to process all applications for licenses, renewals of licenses, and amendments to licenses, pursuant to this chapter.

(Added by Stats. 2010, Ch. 711, Sec. 6. (SB 1080) Effective January 1, 2011. Operative January 1, 2012, by Sec. 10 of Ch. 711.)

## CAL. PENAL CODE § 26175

(a) (1) Applications for licenses and applications for amendments to licenses under this article shall be uniform throughout the state, upon forms to be prescribed by the Attorney General.

(2) The Attorney General shall convene a committee composed of one representative of the California State Sheriffs' Association, one representative of the California Police Chiefs Association, and one representative of the Department of Justice to review, and, as deemed appropriate, revise the standard application form for licenses. The committee shall meet for this purpose if two of the committee's members deem that necessary.

(3) (A) The Attorney General shall develop a uniform license that may be used as indicia of proof of licensure throughout the state.

(B) The Attorney General shall approve the use of licenses issued by local agencies that contain all the information required in subdivision (i), including a recent photograph of the applicant, and are deemed to be in substantial compliance with standards developed by the committee described in subparagraph (C), if developed, as they relate to the physical dimensions and general appearance of the licenses. The Attorney General shall retain exemplars of approved licenses and shall maintain a

**ADDENDUM 17**

list of agencies issuing local licenses. Approved licenses may be used as indicia of proof of licensure under this chapter in lieu of the uniform license developed by the Attorney General.

(C) A committee composed of two representatives of the California State Sheriffs' Association, two representatives of the California Police Chiefs Association, and one representative of the Department of Justice shall convene to review and revise, as the committee deems appropriate, the design standard for licenses issued by local agencies that may be used as indicia of proof of licensure throughout the state, provided that the design standard meets the requirements of subparagraph (B). The committee shall meet for this purpose if two of the committee's members deem it necessary.

(b) The application shall include a section summarizing the requirements of state law that result in the automatic denial of a license.

(c) The standard application form for licenses described in subdivision (a) shall require information from the applicant, including, but not limited to, the name, occupation, residence, and business address of the applicant, the applicant's age, height, weight, color of eyes and hair, and reason for desiring a license to carry the weapon.

(d) Applications for licenses shall be filed in writing and signed by the applicant.

(e) Applications for amendments to licenses shall be filed in writing and signed by the applicant, and shall state what type of amendment is sought pursuant to Section 26215 and the reason for desiring the amendment.

(f) The forms shall contain a provision whereby the applicant attests to the truth of statements contained in the application.

(g) An applicant shall not be required to complete any additional application or form for a license, or to provide any information other than that necessary to complete the standard application form described in subdivision (a), except to clarify or interpret information provided by the applicant on the standard application form.

(h) The standard application form described in subdivision (a) is deemed to be a local form expressly exempt from the requirements of the Administrative Procedure Act (Chapter 3.5 (commencing with Section 11340) of Part 1 of Division 3 of Title 2 of the Government Code).

**ADDENDUM 18**

(i) Any license issued upon the application shall set forth the licensee's name, occupation, residence and business address, the licensee's age, height, weight, color of eyes and hair, and the reason for desiring a license to carry the weapon, and shall, in addition, contain a description of the weapon or weapons authorized to be carried, giving the name of the manufacturer, the serial number, and the caliber. The license issued to the licensee may be laminated.

(Amended by Stats. 2016, Ch. 645, Sec. 1. (AB 2510) Effective January 1, 2017.)

## CAL. PENAL CODE § 26225

(a) A record of the following shall be maintained in the office of the licensing authority:

    (1) The denial of a license.
    (2) The denial of an amendment to a license.
    (3) The issuance of a license.
    (4) The amendment of a license.
    (5) The revocation of a license.

(b) Copies of each of the following shall be filed immediately by the issuing officer or authority with the Department of Justice:

    (1) The denial of a license.
    (2) The denial of an amendment to a license.
    (3) The issuance of a license.
    (4) The amendment of a license.
    (5) The revocation of a license.

(c) (1) Commencing on or before January 1, 2000, and annually thereafter, each licensing authority shall submit to the Attorney General the total number of licenses issued to peace officers pursuant to Section 26170, and to judges pursuant to Section 26150 or 26155.

(2) The Attorney General shall collect and record the information submitted pursuant to this subdivision by county and licensing authority.

(Added by Stats. 2010, Ch. 711, Sec. 6. (SB 1080) Effective January 1, 2011. Operative January 1, 2012, by Sec. 10 of Ch. 711.)

ADDENDUM 19