23-15016

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**MARK BAIRD and RICHARD GALLARDO,**

Plaintiffs and Appellants,

**v.**

**ROB BONTA, in his official capacity as Attorney General of the State of California, and DOES 1-10,**

Defendants and Appellees.

On Appeal from the United States District Court
for the Eastern District of California

No. 2:19-cv-00617-KJM-AC
Honorable Kimberly J. Mueller, Judge

**ANSWERING BRIEF**

ROB BONTA
Attorney General of California
THOMAS S. PATTERSON
Senior Assistant Attorney General
R. MATTHEW WISE
Supervising Deputy Attorney General

RYAN DAVIS
Deputy Attorney General
State Bar No. 266330
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 210-6050
 Fax: (916) 324-8835
 Email: Ryan.Davis@doj.ca.gov
*Attorneys for Defendant Rob Bonta in his Official Capacity as Attorney General of California*

# TABLE OF CONTENTS

**Page**

Introduction ........................................................................................ 1

Statement of Jurisdiction ................................................................. 3

Issue Presented ................................................................................. 3

Statement Regarding Addendum ..................................................... 3

Statement of the Case ...................................................................... 5

        1.    Statutory Background .......................................... 5

        2.    Procedural History ............................................... 7

Summary of the Argument .............................................................. 12

Standard of Review .......................................................................... 13

 Argument ......................................................................................... 14

    I.    *Bruen* Did Not Alter the Winter Factors for Obtaining a
Preliminary Injunction ........................................................... 14

    II.   The District Court Properly Denied the Motion for a
Preliminary Injunction Under the Winter Factors ................. 20

        A.    Plaintiffs Failed to Establish a Likelihood of
Success on the Merits .................................................. 21

            1.    Licensing regimes for public carry remain
constitutional under *Bruen* ................................ 24

            2.    Plaintiffs have no likelihood of success
under *Bruen's* text-and-history standard ........... 28

        B.    The Equitable Factors Also Weigh Against a
Preliminary Injunction ................................................ 34

Conclusion ....................................................................................... 40

Statement of Related Cases.............................................................. 42

Certificate of Compliance ............................................................... 44

i

# TABLE OF AUTHORITIES

**Page**

CASES

*Abed v. United States*
278 A.3d 114 (D.C. July 14, 2022) ........................................................ 27

*All. for the Wild Rockies v. Cottrell*
632 F.3d 1127 (9th Cir. 2011) ........................................................ 18, 22

*and Caetano v. Massachusetts*
577 U.S. 411 (2016) ........................................................ 16

*Benisek v. Lamone*
138 S. Ct. 1942 (2018) ........................................................ 20

*Big Country Foods, Inc. v. Bd. of Educ.*
868 F.2d 1085 (9th Cir.1989) ........................................................ 23

*Binderup v. Attorney General of the United States*
836 F.3d 336 (3d Cir. 2016) ........................................................ 32

*Chalk v. U.S. Dist. Court Cent. Dist. Cal.*
840 F.2d 701 (9th Cir. 1988) ........................................................ 40

*City & Cty. of San Francisco v. United States Citizenship 7 Immigr. Servs.*
944 F.3d 773 (9th Cir. 2019) ........................................................ 18

*DISH Network Corp. v. F.C.C.*
653 F.3d 771 (9th Cir. 2011) ........................................................ 23

*District of Columbia v. Heller*
554 U.S. 570 (2008) ........................................................ *passim*

*Doe v. Snyder*
28 F.4th 103 (9th Cir. 2022) ........................................................ 18

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Duncan v. Bonta*
19 F.4th 1087 (9th Cir. 2021) .................................................. 32

*Flanagan v. Bonta*
No. 18-55717 (9th Cir. Feb. 1, 2023) .........................................7

*Folajtar v. Att'y Gen. of the United States*
980 F.3d 897 (3d Cir. 2020) .................................................. 32

*Fyock v. Sunnyvale*
779 F.3d 991 (9th Cir. 2015) .................................................. 13

*Gonzales v. O Centro Espirita Beneficente Uniao*
*do Vegetal*, 546 U.S. 418 (2006) ............................................ 19

*Gould v. Morgan*
907 F.3d 659 (1st Cir. 2018).................................................. 38

*Jackson v. City & Cty. of San Francisco*
746 F.3d 953 (9th Cir. 2014) .................................................. 15

*Johnson v. Couturier*
572 F.3d 1067 (9th Cir. 2009) ................................................ 13

*Kanter v. Barr*
919 F.3d 437 (7th Cir. 2019) ........................................... 32, 33

*Klein v. City of San Clemente*
584 F.3d 1196 (9th Cir. 2009) ................................................ 23

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*
571 F.3d 873 (9th Cir. 2009) .................................................. 18

*Maryland v. King*
567 U.S. 1301 (2012) .......................................................... 40

# TABLE OF AUTHORITIES
## (continued)

Page

*McDonald v. City of Chicago*
   561 U.S. 742 (2010)............................................................ 15, 27

*Medina v. Whitaker*
   913 F.3d 152 (D.C. Cir. 2019).................................................. 33

*Monstanto Co. v. Geertson Seed Farms*
   561 U.S 139 (2010)................................................................ 20

*Nat'l Rifle Ass'n of Am., Inc. v. Bur. of Alcohol, Tobacco,*
   *Firearms & Explosives*
   700 F.3d 185 (5th Cir. 2012) .................................................. 32

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*
   142 S. Ct. 2111 (2022)...................................................*passim*

*Norman v. State*
   215 So. 3d 18 (Fla. 2017) .................................................. 26, 27

*Ramirez v. Collier*
   142 S. Ct. 1254 (2022).......................................................... 20

*States v. Carter*
   669 F.3d 411 (4th Cir. 2012) .................................................. 33

*Storman, Inc. v. Selecky*
   586 F.3d 1109 (9th Cir. 2009) ................................................ 23

*Tracy Rifle & Pistol LLC v. Harris*
   637 Fed.App'x 401 (9th Cir. 2016) ......................................... 23

*United States v. California*
   921 F.3d 865 (9th Cir. 2019) .................................................. 23

*United States v. Carpio-Leon*
   701 F.3d 974 (5th Cir. 2012) .................................................. 32

# TABLE OF AUTHORITIES
## (continued)

**Page**

*United States v. Hinkson*
  585 F.3d 1247 (9th Cir. 2009) ................................................................. 14

*United States v. Jackson*
  2023 WL 1967199 (W.D. Wash. Feb. 13, 2023) .................................... 32

*United States v. Vongxay*
  594 F.3d 1111 (9th Cir. 2010) ................................................................. 32

*Univ. of Tex. v. Camenisch*
  451 U.S. 390 (1981) ................................................................................. 18

*Winter v. Natural Resources Defense Council, Inc.*
  555 U.S. 7 (2008) ............................................................................ *passim*

*Woollard v. Gallagher*
  712 F.3d 865 (4th Cir. 2013) ............................................................ 38, 39

STATUTES

United States Code, Title 28
  § 1292(a)(1) ............................................................................................... 3
  § 1331 ......................................................................................................... 3
  § 1343 ......................................................................................................... 3

# TABLE OF AUTHORITIES
## (continued)

**Page**

California Penal Code

§ 21650(b)(1) .................................................................................. 26
§ 25850 .................................................................................. *passim*
§ 25850(a) .............................................................................. 1, 5
§ 25850(b) .............................................................................. 1, 5
§ 26000 ........................................................................................ 6
§ 26005 ........................................................................................ 6
§§ 26010-26060 .......................................................................... 6
§ 26150 .............................................................................. 6, 8, 24
§ 26150(a) .................................................................................... 6
§ 26150(a)(1) ............................................................................ 36
§ 26150(a)(4) ............................................................................ 36
§ 26150(b)(1) .............................................................................. 6
§ 26150(b)(2) .................................................................. 1, 6, 8, 26
§ 26155 .............................................................................. 6, 8, 24
§ 26155(a) .................................................................................... 6
§ 26155(b)(1) ...................................................................... 6, 26
§ 26155(b)(2) ........................................................................ 1, 8
§ 26185 .................................................................................. 3, 24
§ 26185(a) .................................................................................... 7
§ 26190 ........................................................................................ 3
§ 26190(f) .................................................................................... 6
§ 26195 .................................................................................. 4, 24
§ 26195(a) .................................................................................... 7
§ 26225 .................................................................................. 4, 5
§ 26250 ........................................................................................ 5
§ 26350 .......................................................................... 1, 3, 5, 8
§ 26350(a)(1) .............................................................................. 5
§ 26350(a)(2) .............................................................................. 5
§§ 26361-26392 .......................................................................... 6

## OTHER AUTHORITIES

C. Sunstein, *On Analogical Reasoning*, 106 Harv. L. Rev. 741,
  773 (1993) .............................................................................. 29

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

https://oag.ca.gov/system/files/media/legal-alert-oag-2022-02.pdf ........................................................................................7

U.S. Dep't of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives, *2012 Summary: Firearms Reported Lost and Stolen* (2013) at 2 ............................................................. 38

vii

**INTRODUCTION**

California enforces a licensing regime that allows individuals to carry firearms in public for self-defense. Under that scheme, a licensed individual may "carry *concealed* a pistol, revolver, or other firearm capable of being concealed upon the person." Cal. Pen. Code § 26150(b)(2) (emphasis added). Under certain circumstances and within counties with a population of under 200,000 persons, a licensed individual may carry "loaded and exposed." *Id.* § 26155(b)(2). But in most places within the State, a license does not authorize open and exposed carriage of firearms in public. That limitation is enforced by two criminal provisions of California's Penal Code, which together prohibit an individual from openly carrying a firearm in public places. Cal. Pen. Code §§ 25850(a), (b), 26350.

Plaintiffs filed suit under the Second Amendment to challenge the State's prohibitions on the open carriage of firearms in public. They also sought a preliminary injunction to halt enforcement of the prohibitions, requesting authorization to openly carry firearms while the district court considered their claims. In the motion, Plaintiffs did not dispute that the State authorizes concealed carry of firearms in public; acknowledged that they may currently carry firearms in a concealed manner within the State; and did not otherwise challenge the constitutionality of the concealed-carry

1

requirements. They instead sought to vindicate an asserted right to openly carry arms in an "unregulated" manner pending the disposition of their claims. Appellant's Opening Brief (AOB) at 1.

The district court properly denied the motion for a preliminary injunction. The district court correctly analyzed the request under the four-factor standard for obtaining a preliminary injunction established by the Supreme Court in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008). Although Plaintiffs argued that equitable considerations are irrelevant to evaluating preliminary injunction requests under the Second Amendment after *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2122 (2022), the district court correctly held that the "a court may not enter a preliminary injunction unless the moving party shows the balance of harms and public interest weigh in its favor." 1-ER-13. Plaintiffs did not even attempt to meet that burden before the district court; further, the unrebutted record established how the State's interest in public safety is advanced by the licensing scheme and the substantial public harms that would arise if residents could openly and notoriously carry firearms in public. And because Plaintiffs are also unlikely to prevail on their claim that they have a right to openly carry a firearm in public in a wholly unregulated manner, Plaintiffs cannot meet the only *Winter* factor they did try to address

2

in the proceedings below.  The district court's order denying a preliminary

injunction should be affirmed.

## STATEMENT OF JURISDICTION

The Attorney General agrees that the District Court had subject matter

jurisdiction over the action under 28 U.S.C. §§ 1331 and 1343, and that this

Court has jurisdiction to review the denial of Plaintiffs' preliminary

injunction motion under 28 U.S.C. §1292(a)(1).

## ISSUE PRESENTED

Whether the district court abused its discretion by denying a

preliminary injunction enjoining the enforcement of sections 25850 and

26350, which would have the effect of allowing anyone not prohibited from

possessing firearms to carry a handgun in public, open and exposed, and

without a license.

## STATEMENT REGARDING ADDENDUM

Except for the following, all applicable statutes, etc., are included in the

addendum to the AOB.

### California Penal Code section 26185

(a) (1) The fingerprints of each applicant shall be taken
and two copies on forms prescribed by the Department
of Justice shall be forwarded to the department.

(2) Upon receipt of the fingerprints and the fee as
prescribed in Section 26190, the department shall

3

promptly furnish the forwarding licensing authority a report of all data and information pertaining to any applicant of which there is a record in its office, including information as to whether the person is prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm.

(3) No license shall be issued by any licensing authority until after receipt of the report from the department.

(b) Notwithstanding subdivision (a), if the license applicant has previously applied to the same licensing authority for a license to carry firearms pursuant to this article and the applicant's fingerprints and fee have been previously forwarded to the Department of Justice, as provided by this section, the licensing authority shall note the previous identification numbers and other data that would provide positive identification in the files of the Department of Justice on the copy of any subsequent license submitted to the department in conformance with Section 26225 and no additional application form or fingerprints shall be required.

(c) If the license applicant has a license issued pursuant to this article and the applicant's fingerprints have been previously forwarded to the Department of Justice, as provided in this section, the licensing authority shall note the previous identification numbers and other data that would provide positive identification in the files of the Department of Justice on the copy of any subsequent license submitted to the department in conformance with Section 26225 and no additional fingerprints shall be required.

## California Penal Code section 26195

a) A license under this article shall not be issued if the Department of Justice determines that the person is prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm.

4

(b) (1) A license under this article shall be revoked by the local licensing authority if at any time either the local licensing authority is notified by the Department of Justice that a licensee is prohibited by state or federal law from owning or purchasing firearms, or the local licensing authority determines that the person is prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm.

(2) If at any time the Department of Justice determines that a licensee is prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm, the department shall immediately notify the local licensing authority of the determination.

(3) If the local licensing authority revokes the license, the Department of Justice shall be notified of the revocation pursuant to Section 26225. The licensee shall also be immediately notified of the revocation in writing.

## STATEMENT OF THE CASE

### 1. Statutory Background

Under California law, a person is generally prohibited from carrying a firearm in public without a license.  Section 25850 of California's Penal Code prohibits a person from "carrying a loaded firearm" outside or inside a vehicle in public places.  Cal. Pen. Code § 25850(a), (b).  Section 26350 prohibits a person from "openly carrying an unloaded handgun" outside or inside a vehicle in public places.  *Id.* § 26350(a)(1), (a)(2).  California's scheme includes several statutory exemptions to the prohibitions in sections 25850 and 26250, including for peace officers, members of the military

engaged in the performance of their duties (*id.* § 26000), persons using target ranges or hunting on the premises of a shooting club (*id.* § 26005), and security guards and government officers. *See id.* §§ 26010-26060, 26361-26392.

The prohibitions on carrying in public also do not apply to those who obtain licenses under the State's concealed-carry licensing regime, contained in sections 26150 or 26155, which authorizes county sheriffs and chiefs of police to issue public-carry licenses, including licenses "to carry concealed a pistol, revolver, or other firearm capable of being concealed upon the person" (*id.* §§ 26150(b)(1), 26155(b)(1)), and licenses to carry "loaded and exposed" in counties with a population of less than 200,000 persons. *Id.* §§ 26150(b)(2), 26155(b)(2). To obtain a public-carry license, an applicant must establish that (1) "the applicant is of good moral character;" (2) the applicant is a resident of the relevant county (or has their principal place of business or employment there); and (3) the applicant has completed a course of training. Cal. Pen. Code §§ 26150(a), 26155(a). Issuing authorities may also require psychological testing. *Id.* § 26190(f). As written, sections 26150(a) and 26155(a) also include a good-cause requirement but it is no longer enforced post-*Bruen*. The day after the Supreme Court announced its decision in *Bruen*, the Attorney General issued a legal alert to inform law

enforcement that "[p]ermitting agencies may no longer require a demonstration of 'good cause' in order to obtain a concealed carry permit."[1] *See also Flanagan v. Bonta*, No. 18-55717 (9th Cir. Feb. 1, 2023) (dismissing appeal involving good cause requirement as moot).

State law further provides that "fingerprints of each applicant shall be taken" and that upon receipt of the fingerprints and the requisite fees, the California Department of Justice "shall promptly furnish the forwarding licensing authority a report of all data and information pertaining to any applicant of which there is a record in its office, including information as to whether the person is prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm." Cal. Pen. Code § 26185(a). Licenses "shall not be issued if the [DOJ] determines that the person is prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm." *Id.* § 26195(a).

### 2. Procedural History

Plaintiffs Mark Baird and Richard Gallardo, according to their own admissions in deposition testimony are authorized under state law to carry concealed firearms in public. Mr. Baird has a license, issued by the Siskiyou

---

[1] *See* https://oag.ca.gov/system/files/media/legal-alert-oag-2022-02.pdf.

County Sheriff, to carry a concealed firearm. *See* 1-ER-68-69, 1-ER-71. He also lives in a county in which state law allows open-carry licenses to be issued, though such a license would not extend outside of Siskiyou County lines. 1-ER-424; Cal. Pen. Code §§ 26150(b)(2), 26155(b)(2). Mr. Gallardo has testified that he is authorized to carry a concealed firearm within the State because of his status as a retired military police officer under the federal Law Enforcement Officers Safety Act (LEOSA) (*see* 1-ER-78, 1-ER-80), even though he had a license to carry a concealed firearm revoked in 2019 for unlawfully bringing a firearm on state property and displaying it to co-workers (*see* 1-ER-77-79, 1-ER-84). He also lives in a county in which state law allows open carriage pursuant to its licensing regime, though a license issued to him would not extend outside of Shasta County. 1-ER-424.

In April 2019, Plaintiffs filed a complaint against the California Attorney General for declaratory and injunctive relief, challenging California's prohibition on open carry under the Second, Fourth, and Fourteenth Amendments to the Constitution. 1-ER-0597. They sought a preliminary injunction, which the district court denied. 1-ER-600. Plaintiffs subsequently filed an amended complaint raising only Second Amendment claims, again alleging that four state laws—Penal Code sections 25850,

26350, 26150, and 26155—violate the Second Amendment. 1-ER-600. Plaintiffs again moved for a preliminary injunction and the Attorney General moved for summary judgment. 1-ER-600, 1-ER-602. Before the district court ruled on those motions, the parties jointly requested a stay pending the Supreme Court's decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111, 2122 (2022). *See* ER 602.

After the Supreme Court issued its decision in *Bruen*, the district court lifted the stay and Plaintiffs filed the motion for a preliminary injunction at issue in this appeal, as well as the operative, Second Amended Complaint. 1-ER-603. In their Second Amended Complaint, Plaintiffs maintain their facial challenges to sections 25850 and 26350 (prohibiting open carry in most circumstances), but no longer challenge any aspect of California's public-carry licensing scheme (authorizing concealed carry for qualified licensees). In their motion for preliminary injunction, Plaintiffs sought an interim injunction that would allow them "to carry a handgun open and exposed for self-defense, loaded or unloaded" and to do so "without seeking

permission from the government, including applying for and obtaining a license." 3-ER-425.[2]

The district court denied the motion for a preliminary injunction. 1-ER-1-16.[3] The district court applied the United States Supreme Court's standards for the issuance of interim injunctive relief, *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008), observing that Plaintiffs "must establish" that "they are 'likely to succeed on the merits,'" that "they are 'likely to suffer irreparable harm in the absence of preliminary relief,'" that "'the balance of equities tips in [their] favor,'" and that "'an injunction is in the public interest.'" 1-ER-6. In view of Plaintiffs' need to prove each of those requirements, the district court concluded that it was "not necessary"

---

[2] The sweeping breadth of Plaintiffs' request is consistent with their deposition testimony, in which Mr. Baird explained he brought the underlying lawsuit "hoping to achieve the unpermitted and unrestricted open carry of a loaded firearm in the State of California," and Mr. Gallardo's testimony that he "hope[s] to achieve the ability to open carry without government permission." 1-ER-70, 1-ER-79.

[3] In the same order, the district court dismissed any as-applied challenge to the denial of an open carry license in their counties of residence or on behalf of individuals in counties that do not allow open carriage under any circumstance. 1-ER 5-6. The district court reasoned that Plaintiffs lack standing to bring those as-applied challenges because they sued only the Attorney General, who does not have authority to issue public-carry licenses, and Plaintiffs accordingly could not establish that "a favorable decision would redress their alleged injury." 1-ER-6.

to assess whether the challenged Penal Code provisions "restrict[] conduct within the Second Amendment's plain text under *Bruen* or whether the challenged Penal Code sections are within the nation's historical tradition of firearms regulation." 1-ER-10. The court observed that those questions would require a "difficult investigation and careful consideration of historical firearm regulations" and that historical experts would be necessary to provide a "thorough, rigorous, and balanced" analysis. 1-ER-14.

But the court held that because Plaintiffs did not even attempt to establish that the balance of equities and public interest favored an injunction, they had failed to shoulder their burden to show that "it would be better to upend the status quo" through a preliminary injunction. 1-ER-15. In doing so, the district court rejected Plaintiffs' argument that equitable considerations are irrelevant after *Bruen* when a preliminary injunction is sought on Second Amendment grounds. 1-ER-13. The court acknowledged that "the state could not defend its laws at trial by arguing they advance a compelling state interest in public safety." 1-ER-13. But the court reasoned that Plaintiffs "are not seeking final judgment; rather, they are seeking a preliminary injunction, and the Supreme Court has held that a court may not enter a preliminary injunction unless the moving party shows the balance of harms and public interest weigh in its favor." 1-ER-13. Because Plaintiffs

11

did not attempt to make that showing, and in light of the evidence submitted by the State, the district court denied the preliminary injunction. 1-ER-14-15; *see also* 1-ER-12 (Plaintiffs "have not shown" that any harm to them "outweighs the harms that would likely result from an immediate preliminary injunction").

On January 3, 2023, Plaintiffs filed a timely Notice of Interlocutory Appeal. 1-ER-17-18.

## SUMMARY OF THE ARGUMENT

The district court properly declined to enjoin the criminal prohibitions on open carriage of firearms while it considers Plaintiffs' Second Amendment claims. It correctly rejected Plaintiffs' assertion that equitable considerations are no longer relevant in evaluating preliminary injunction requests to enjoin laws under the Second Amendment. And the district court properly required Plaintiffs to establish all four factors for obtaining a preliminary injunction established in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008).

Each of those four factors weighed against Plaintiffs' request for preliminary relief. First, although the district court reasonably concluded that it did not need to reach the merits because Plaintiffs had not demonstrated that the equitable factors weigh in favor of a preliminary

12

injunction, Plaintiffs are not likely to succeed on the merits of their claim. The Supreme Court's decision in *Bruen*, as well as the available historical record, confirm that States may enforce licensing schemes and regulate the manner of public-carry in particular. The equitable considerations also weighed against relief. Plaintiffs will not be irreparably harmed by the denial of temporary injunctive relief as they both acknowledge that they may carry concealed firearms for self-defense in public. And the district court properly weighed the balance of the equities and public interest and correctly concluded that those considerations weigh against relief.

## STANDARD OF REVIEW

This Court reviews a district court's denial of a motion for a preliminary injunction for abuse of discretion, and the underlying legal principles de novo. *Fyock v. Sunnyvale*, 779 F.3d 991, 995 (9th Cir. 2015). "This review is 'limited and deferential,' and it does not extend to the underlying merits of the case." *Johnson v. Couturier*, 572 F.3d 1067, 1078 (9th Cir. 2009). Instead, the Court "determine[s] only whether the district court correctly distilled the applicable rules of law and exercised permissible discretion in applying those rules to the facts at hand." *Fyock*, 779 F.3d at 995. So long as the district court applied the correct legal rules, the Court may reverse only if resolution of the motion resulted from factual

13

findings, or applications of those findings to law, that were "illogical, implausible, or without support in the inferences that may be drawn from the record." *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (articulating contours of applicable clear error standard).

## ARGUMENT

### I. *BRUEN* DID NOT ALTER THE *WINTER* FACTORS FOR OBTAINING A PRELIMINARY INJUNCTION

1. The Supreme Court's decision in *Bruen* did not alter the standards for issuance of a preliminary injunction.  In *Bruen*, the Supreme Court reviewed a decision granting a motion to dismiss, addressing the constitutionality of New York's requirement that individuals show "proper cause" as a condition of securing a license to carry a firearm in public.  *Id.* at 2123.  Before turning to the merits, the Court announced a new methodology for analyzing Second Amendment claims.  It recognized that lower courts had "coalesced around a 'two-step' framework for analyzing Second Amendment challenges that combines history with means-end scrutiny."  *Id.* at 2125.  At the first step of that approach, the government could "justify its regulation by establishing that the challenged law regulates activity falling outside the scope of the Second Amendment right as originally understood."  *Id.* at 2126 (brackets and quotation marks omitted).  If that inquiry showed

that the regulation did not burden conduct protected by the Second
Amendment, lower courts would uphold the regulation without further
analysis. *Id.* Otherwise, courts would proceed to the second step, which
asked "how close[ly] the law c[ame] to the core of the Second Amendment
right and the severity of the law's burden on the right," applying
intermediate scrutiny unless the law severely burdened the "'core' Second
Amendment right" of self-defense in the home, in which case strict scrutiny
applied. *Id.*; *Jackson v. City & Cty. of San Francisco*, 746 F.3d 953, 960
(9th Cir. 2014) (same); *see also* Opening Br. at 26, 34, 36–37 (describing the
two-step framework).

The Supreme Court in *Bruen* jettisoned the two-step approach. *See* 142
S. Ct. at 2126. The Court explained that its earlier decisions in *District of
Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. City of Chicago*,
561 U.S. 742 (2010), "do not support applying means-end scrutiny in the
Second Amendment context." *Id.* at 2126–2127. It then announced a new
standard for analyzing Second Amendment claims that is "centered on
constitutional text and history." *Id.* at 2128–2129. Under this text-and-
history approach,

> When the Second Amendment's plain text covers an individual's
> conduct, the Constitution presumptively protects that conduct.
> The government must then justify its regulation by demonstrating

15

that it is consistent with the Nation's historical tradition of firearm regulation.

*Id.* at 2129–2130.

Applying that test to the case before it, the Court held that New York's "proper cause" requirement was inconsistent with the Second Amendment's text and history, and therefore unconstitutional. *Id.* at 2134–2156. New York defined "proper cause" as a showing of "special need for self-protection distinguishable from that of the general community." *Id.* at 2123. This was a "demanding" standard, *id.*, and made it "virtually impossible for most New Yorkers" "to carry a gun outside the home for self-defense," *id.* at 2156 (Alito, J., concurring). The Supreme Court had "little difficulty" concluding that the "plain text" of the Second Amendment protected the course of conduct that the *Bruen* plaintiffs wished to engaged in—"carrying handguns publicly for self-defense"—reasoning that the term "'bear' naturally encompasses public carry." *Id.* at 2134.[4] The Court explained that because "self-defense is 'the *central component* of the [Second Amendment]

---

[4] No party in *Bruen* disputed that the "ordinary, law-abiding, adult citizens" who were plaintiffs in the case were "part of 'the people' whom the Second Amendment protects." 142 S. Ct. at 2134. And no party disputed that the handguns that the plaintiffs sought to carry in public qualified as protected "Arms." *Id.* (citing *Heller*, 554 U.S. at 627, *and Caetano v. Massachusetts*, 577 U.S. 411, 411-412 (2016)).

right itself," and because "[m]any Americans hazard greater danger outside the home than in it," it would make "little sense" to confine that right to the home. *Id.* at 2135.

Because the plain text of the Second Amendment covered the *Bruen* plaintiffs' proposed course of conduct, the burden then shifted to the government to show that the prohibition was consistent with an accepted tradition of firearm regulation. *Bruen*, 142 S. Ct. at 2135. After conducting a lengthy survey of "the Anglo-American history of public carry," the Court held that New York had failed to justify its proper-cause requirement. *Id.* at 2156. The Court concluded that this history showed that the Second Amendment guaranteed a right to bear "commonly used arms" in public, "subject to certain reasonable, well-defined restrictions," which had not historically included a requirement that "law-abiding, responsible citizens . . . 'demonstrate a special need for self-protection distinguishable from that of the general community' in order to carry arms in public.'" *Id.*

2. While *Bruen* announced a new standard for analyzing Second Amendment claims, it did not upend well-settled standards governing interim injunctive relief. As the district court accurately recounted, "[t]o obtain a preliminary injunction, [Plaintiffs] must establish four things by a clear showing: they are likely to succeed on the merits, they are likely to

17

suffer irreparable harm in the in the absence of preliminary relief, the balance of equities tips in their favor, and an injunction is in the public interest."  1-ER-6, citing *City & Cty. of San Francisco v. United States Citizenship 7 Immigr. Servs.*, 944 F.3d 773, 788-89 (9th Cir. 2019) (internal quotation marks and alterations omitted).  Alternatively, "[a] preliminary injunction is appropriate when a plaintiff demonstrates that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor," but even then, only "so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011, emphasis added) (internal citation omitted).

Preliminary injunctions, when appropriate, are ordinarily intended to "merely preserve the relative positions of the parties until a trial on the merits can be held."  *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Accordingly, courts exercise special caution before imposing an injunction that changes the status quo, requiring a plaintiff to show that "extreme or very serious damage" will occur in the absence of an injunction.  *Doe v. Snyder*, 28 F.4th 103, 111 (9th Cir. 2022) (quoting *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009)).

18

Plaintiffs argue that the district court erred by even applying the interest-balancing required by the *Winter* test. This follows, they claim, from the fact that "[i]nterest balancing is not part of the *Bruen* test, and the lower courts are without any authority to alter it." AOB at 19. But the district court did not alter the *Bruen* test on the merits of their Second Amendment claim. Indeed, the district court acknowledged that "[u]nder *Bruen*, the state could not defend its laws at trial by arguing they advance a compelling state interest in public safety." 1-ER-13, citing *Bruen*, 142 S. Ct. at 2127 (rejecting "means-end scrutiny in the Second Amendment context"). The Attorney General does not argue otherwise. But as the district court also observed, Plaintiffs "are not seeking final judgment; rather, they are seeking a preliminary injunction, and the Supreme Court has held that a court may not enter a preliminary injunction unless the moving party shows the balance of harms and public interest weigh in its favor. *See Winter*, 555 U.S. 20, 32. Public safety is part of that balance." 1-ER-13.

The only case Plaintiffs cite to support their assertion that *Bruen* implicitly overruled *Winter*, at least in part, is *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006), a *pre-Bruen* and *pre-Winter* decision in which the Supreme Court noted that the "burdens at the preliminary injunction stage track the burdens at trial." AOB at 22. But

19

that case addressed only the burdens at the preliminary-injunction stage, with regard to the first *Winter* factor.  The Court said nothing to suggest that the analysis of whether a preliminary injunction should be imposed does not include consideration of equitable factors.  And indeed, even after *Gonzales* was decided, the Supreme Court has relied on equitable considerations in reviewing the disposition of preliminary injunction requests.  *See, e.g.*, *Ramirez v. Collier* 142 S. Ct. 1254, 1282 (2022) (noting, in the consideration of a preliminary injunction, that the Court's conclusion that the plaintiff was likely to prevail on his claim "does not end the matter" because the plaintiff must also establish that the equitable factors weigh in favor of an injunction); *Benisek v. Lamone*, 138 S. Ct. 1942, 1944-44 (2018) (preliminary injunctions are not imposed "as a matter of course from a plaintiff's showing of a likelihood of success on the merits" because the equitable factors must also be considered); *Monstanto Co. v. Geertson Seed Farms* 561 U.S 139, 157 (2010) (applying "[t]he traditional four-factor test" under *Winter*).

## II.  THE DISTRICT COURT PROPERLY DENIED THE MOTION FOR A PRELIMINARY INJUNCTION UNDER THE *WINTER* FACTORS

Applying all of the *Winter* factors, the district court properly denied Plaintiffs' motion for a preliminary injunction.  As the district court

observed, Plaintiffs did not even attempt to show that enjoining the
concealed carry regime and allowing open and exposed carriage would be in
the public interest while the court considered the merits of their Second
Amendment claim. That alone was a proper basis for denying the motion
for failure to satisfy *Winter*'s requirements that the balance of equities tips in
their favor, and that an injunction is in the public interest. *Supra* pp. 17-20.
Moreover, plaintiffs failed to meet their burden to show a likelihood of
success on their claim that they have the right to openly carry a firearm in
public under the Second Amendment. Under a complete analysis, including
all four *Winter* factors, Plaintiffs' motion for a preliminary injunction—to
carry firearms openly and exposed in public—was correctly denied.

### A. Plaintiffs Failed to Establish a Likelihood of Success on the Merits

Plaintiffs contend that the district court "erroneously disregarded" the
first *Winter* factor. AOB at 14, 17. It is true that the district court did not
resolve whether plaintiffs had shown a likelihood of success, in part based
on the difficulty of conducting complicated historical analysis in the
preliminary-injunction posture. 1-ER-14. The district court observed,
however, that it did not need to resolve likelihood of success on the merits
because it would make no difference. The district court explained that "[a]

court cannot enter a preliminary injunction if the moving party does not show 'the balance of equities tip in [its] favor,' and 'an injunction is in the public interest.'" ER 10, quoting *Winter*, 555 U.S. at 20. Plaintiffs cannot obtain a preliminary injunction, in other words, without making an adequate showing on *all* of the *Winter* factors. The district court justified its reasoning, too, by noting that the Supreme Court vacated a preliminary injunction in *Winter* based solely on an assessment of equitable considerations, without addressing the merits of the underlying claims and while assuming without deciding the plaintiffs would suffer an irreparable harm. 1-ER-10, citing *Winter*, 555 U.S. at 20-31.

Plaintiffs offer nothing by way of reasoning or authority to support their argument that the district court was obliged to resolve the likelihood of success on the merits of their claims, even after concluding that Plaintiffs could not meet their burden regarding the other *Winter* factors. Consistent with the Supreme Court's analysis, this Court has repeatedly recognized that "proving the likelihood of [success on the merits] is not enough to satisfy

*Winter*." *DISH Network Corp. v. F.C.C.*, 653 F.3d 771, 776 (9th Cir. 2011)

(citing *Storman, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009).[5]

In any event, Plaintiffs did not establish that they are likely to prevail

on the merits of their Second Amendment claim. *Big Country Foods, Inc. v.*

*Bd. of Educ.*, 868 F.2d 1085, 1088 (9th Cir.1989) ("We may affirm the

denial of a preliminary injunction "on any ground supported by the

record."). Plaintiffs demand *unlicensed* open carry, claiming that *no*

licensing scheme for open carry would pass constitutional muster. Not only

does *Bruen* directly foreclose this claim, but this claim also fails under the

text-and-history analysis required by *Bruen*.

---

[5] *See also Klein v. City of San Clemente*, 584 F.3d 1196, 1207 (9th Cir. 2009 (even where the plaintiff was likely to succeed on the merits of his First Amendment claim, he "must also demonstrate that he is likely to suffer irreparable injury in the absence of a preliminary injunction, and that the balance of equities and the public interest tip in his favor"); *United States v. California*, 921 F.3d 865, 894 (9th Cir. 2019) (considering the other factors even after concluding that the United States was likely to prevail on the merits of a Supremacy Clause challenge and remanding to the district court for further consideration of relative harms); *Tracy Rifle & Pistol LLC v. Harris*, 637 Fed.App'x 401, 402 (9th Cir. 2016) (affirming denial of preliminary injunction where the magnitude of potential harm was minimal and balance of equities did not tip in plaintiffs' favor, even though district court plausibly concluded that challenged restriction was likely unconstitutional on the merits).

23

### 1. Licensing regimes for public carry remain constitutional under *Bruen*

*Bruen* makes clear that States may retain licensing regimes for the public carry of firearms. Although *Bruen* invalidated one aspect of New York's licensing scheme (the proper-cause requirement), the Supreme Court explicitly approved of the practice of requiring a permit to carry a firearm in public so long as States do not deny public-carry licenses to ordinary citizens who fail to show that they have a special need for one. Both the majority opinion and Justice Kavanaugh's concurring opinion approved of states continuing to require that a public-carry license applicant first pass a background check—as provided for in sections 26185 and 26195—and pass a firearms safety course—as provided for in subdivision (a)(4) of sections 26150 and 26155. *Bruen*, 142 S. Ct. at 2123-24 (citing approvingly the licensing schemes of 43 States); *id.* at 2138 n.9 ("nothing in our analysis should be interpreted to suggest the unconstitutionality of the 43 States' 'shall-issue' licensing regimes" or other licensing requirements that are "'narrow, objective, and definite'"); *see also id.* at 2161 (Kavanaugh, J., concurring). Indeed, Plaintiffs acknowledge that *Bruen* allows licensing schemes so long as the relevant authorities grant or deny applications based

24

on objective factors.  *See* AOB at 6 n.9; *see also* AOB at 11 (referring "to the extent that the Supreme Court allows licensing schemes to continue").

*Bruen* thus made clear that restrictions on the carrying and possession of firearms are permissible under the Second Amendment, and implicitly endorsed "reasonable, well-defined" restrictions on the public carrying of firearms.  *Bruen*, 142 S.Ct. at 2156.  And a necessary implication of *Bruen*'s endorsement of licensing regimes with "'narrow, objective, and definite standards,'" (*id.* at p. 2138 fn.9) is that States may prohibit the carrying of firearms by those who do not secure a license in the first instance.

Plaintiffs suggest that the Supreme Court in *Bruen* implicitly held that both concealed carry and open carry—not just some form of public carry for purposes of self-defense—are protected by the Second Amendment.  AOB at 14.  They derive that principle from a passage in *Bruen* that quotes *Heller* for the proposition that "the right to 'bear arms' refers to the right to 'wear, bear, or carry . . . upon the person or in the clothing or in a pocket . . . .'" *Bruen*, 142 S. Ct. at 2134, (quoting *District of Columbia v. Heller*, 554 U.S. 570, 2134 (2008)).  But that does not establish a right to open carriage.  The Court only referenced that portion of *Heller* to support its point that the "definition of 'bear' naturally encompasses public carry."  *Bruen*, 142 S. Ct. at 2134.  That much is not in dispute.  But Plaintiffs, like all ordinary and

law-abiding Californians, do have the ability to carry in public, although
most Californians who obtain a license to do so must carry concealed. *See*
Cal. Pen. Code §§ 21650(b)(1), 26155(b)(1).[6] Because the ability to
lawfully carry concealed *is* available to Plaintiffs, the demands of the
Second Amendment under *Bruen* are satisfied.

The conclusion that the Second Amendment does not require states to
accommodate the right to public carry via open carry is consistent with
decisions that both pre- and post-date *Bruen*. In *Norman v. State*, 215 So. 3d
18 (Fla. 2017), Florida's highest court upheld the state's open carry
restrictions against federal (and state) constitutional challenges. *Id*. at 22.
Although the Court applied the now-defunct two-step test, *see id.* at 28-41,
its reasoning remains persuasive. The court there observed that so long as
the right to public carry is accommodated in some manner, the legislature
may choose between open and concealed carry because limitations on open
carriage do "not diminish an individual's ability to carry a firearm for self-
defense, so long as the firearm is carried in a concealed manner and the

---

[6] As noted above, in counties with less than 200,000 people, local
licensing authorities have the option of issuing a license to residents that
allows them to carry openly "only in that county." Cal. Pen. Code
§§ 26150(b)(2), 26155(b)(2).

individual has received a concealed-carry license." *Id.* at 27–28; *see also id.* at 37 ("Significantly, unlike the laws at issue in *Heller* and *McDonald*, which completely banned the possession of handguns in one's home, Florida's Open Carry Law regulates only <u>how</u> firearms are borne in public.").

The first and thus far only appellate court to comment on *Bruen*'s application to open carry regulations also concluded that "nothing in the [*Bruen*] opinion implies that a State must allow open carry." *Abed v. United States*, 278 A.3d 114, 129 n.27 (D.C. July 14, 2022). Although the defendant in that case did not directly challenge the constitutionality of a law prohibiting open carry, the court read *Bruen* only to "suggest that a State would be required to allow open-carry of a handgun for self-defense *if* it were to broadly prohibit concealed carry." *Id.* (emphasis added).

In sum, *Bruen* establishes that a State may reasonably regulate the manner of public carry—including by restricting open carry—so long as it provides some manner, *e.g.*, concealed carry, in which qualified, law-abiding persons may publicly carry firearms. Because Plaintiffs do not dispute that concealed carry in most public places is an option for those Californians who obtain a license, California's open carry laws do not function as a ban

on public carry and the demands of the Second Amendment under *Bruen* are satisfied.

### 2. Plaintiffs have no likelihood of success under *Bruen*'s text-and-history standard

Even if Plaintiffs' claim that the Second Amendment requires unlicensed open carry were not directly foreclosed by *Bruen*, the claim would still fail under *Bruen*'s text-and-history standard for adjudicating Second Amendment claims. This standard requires the party challenging a restriction under the Second Amendment to first demonstrate that the law regulates conduct protected by the "plain text" of the Second Amendment. *Bruen*, 142 S. Ct. at 2126.

Assuming for the sake of argument that the plain text of the Second Amendment covers Plaintiffs' proposed conduct—to carry a handgun in public openly and exposed, and without a license—Plaintiffs are still unlikely to prevail on the merits of the historical analysis required by *Bruen*. Under this analysis, the court considers whether the challenged law is "consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2126. And while *Bruen* recognized that the historical analysis conducted at the first step of the two-step approach that lower courts had adopted for analyzing Second Amendment claims was "broadly

28

consistent with *Heller*," *id.* at 2127, it clarified how that analysis should proceed in important respects.  In some cases, this historical inquiry will be "fairly straightforward," such as when a challenged law addresses a "general societal problem that has persisted since the 18th century." *Id.* at 2131.  But in others—particularly those where the challenged laws address "unprecedented societal concerns or dramatic technological changes"—this historical analysis requires a "more nuanced approach." *Id.* at 2132.

Under this "more nuanced approach," governments are not required to identify a "historical *twin*," and need only identify a "well-established and representative historical *analogue*." *Bruen*, 142 S. Ct. at 2133 (emphasis in original).  Thus, a modern-day regulation need not be a "dead ringer for historical precursors" to pass constitutional muster. *Id.*  Instead, in evaluating whether a "historical regulation is a proper analogue for a distinctly modern firearm regulation," *Bruen* directs courts to determine whether the two regulations are "'relevantly similar.'" *Id.* at 2132 (quoting C. Sunstein, *On Analogical Reasoning*, 106 Harv. L. Rev. 741, 773 (1993)).  The Court identified "two metrics" by which regulations must be "relevantly similar under the Second Amendment":  "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 2133.  After *Bruen*, a modern regulation that restricts conduct protected by the

29

plain text of the Second Amendment is constitutional if it "impose[s] a comparable burden on the right of armed self-defense" as its historical predecessors that is "comparably justified." *Id*.

Plaintiffs cannot establish that they are likely to succeed on their claim that unlicensed open carry is *required* as a matter of history. To the contrary, the Supreme Court's analysis in *Bruen* demonstrates that throughout this Nation's history, States have been allowed to prohibit certain methods of carry so long as they do not bar public carry altogether. The Court reviewed several cases from the antebellum era considering laws regulating the manner of carry and concluded that those decisions "agreed that concealed-carry prohibitions were constitutional only if they did not similarly prohibit *open* carry." *Id.* at 2146 (citing cases from Alabama, Louisiana and Kentucky). The Court also noted a colonial New Jersey law that "prohibited only the *concealed* carry of pocket pistols . . . [and] presumably did not by its terms touch the open carry of larger [weapons]." *Id.* at 2144. These cases, and the historical state laws they considered, reflected "a consensus view that States could not *altogether prohibit* the public carry of arms protected by the Second Amendment or state analogues," *id*. at 2147 (emphasis added), but that reasonable restrictions on the *manner* of carry were otherwise permissible. Indeed, the Court noted

30

that state courts after the Civil War "continued the antebellum tradition of upholding concealed carry regimes that seemingly provided for open carry." *Id.* at 2155 n.30.

Elsewhere, the Court held that New York's proper-cause requirement was not supported by English and early American laws that prohibited the "bearing of arms in a way that spreads 'fear' or 'terror' among the people." *Bruen*, 142 S. Ct. at 2145. These laws demonstrated that States could prohibit the carrying of "deadly weapons in a *manner* likely to terrorize others." *Id.* at 2150. Collectively, the public carry laws considered in *Bruen* offer a robust historical tradition of regulating the manner in which firearms have been carried in public—like California's public carry laws do today.

California's law is also part of a well-established historical tradition of laws ensuring that only law-abiding, responsible citizens exercise their Second Amendment rights. Although background checks first appeared in the early 20th century, *Bruen* confirms that they are consistent with a history and tradition of ensuring "that those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens.'" *Id.* at 2138 n.9. *Heller* similarly confirmed the "longstanding" history and tradition of regulating possession by prohibited persons, 554 U.S. at 626, and the Ninth Circuit has recognized that "the right to bear arms was inextricably tied to the concept of a virtuous

31

citizenry" and that "the right to bear arms does not preclude laws disarming the unvirtuous citizens (i.e. criminals)," *United States v. Vongxay*, 594 F.3d 1111, 1118 (9th Cir. 2010) (cleaned up)[7]; *see also Duncan v. Bonta*, 19 F.4th 1087, 1157 & n.27 (9th Cir. 2021)[8] (Bumatay, J., dissenting) ("Prohibiting the possession of arms by those found by the state to be dangerous, like violent criminals, dates to the Founding.") (citing *Kanter v. Barr*, 919 F.3d 437, 464 (7th Cir. 2019) (Barrett, J., dissenting)))[9] As explained by then-

---

[7] Even though it was decided before *Bruen*, *Vongxay* is good law, to which courts in this Circuit are bound. *United States v. Jackson*, 2023 WL 1967199, at *5 & n.4 (W.D. Wash. Feb. 13, 2023) ("join[ing] with other district courts in this circuit" in finding itself "bound by *Vongxay* and its progeny" post-*Bruen* (collecting cases)).

[8] Although the opinions in *Duncan* and *Kanter* have been vacated and abrogated, respectively, the dissenting opinions are cited for their persuasive value.

[9] *See also Nat'l Rifle Ass'n of Am., Inc. v. Bur. of Alcohol, Tobacco, Firearms & Explosives*, 700 F.3d 185, 203 (5th Cir. 2012) (noting the "longstanding tradition of targeting select groups' ability to access and to use arms for the sake of public safety"); *United States v. Carpio-Leon*, 701 F.3d 974, 980 (5th Cir. 2012) (noting colonial laws restricting ownership of firearms by "potential subversives" and "suspect populations" who were considered disloyal or dangerous"); *Folajtar v. Att'y Gen. of the United States*, 980 F.3d 897, 905 (3d Cir. 2020) (explaining that excluding felons from "the people" comports with principles supporting founding-era disarmament of those who were unwilling to abide by societal norms and thereby placing them outside the community); *Binderup v. Attorney General of the United States*, 836 F.3d 336, 349 (3d Cir. 2016) (noting that "'[c]rimes committed'—violent or not—were thus an independent ground for exclusion from the right to keep and bear arms" and that "there is reason to believe that

Judge Barrett, history "support[s] the proposition that the state can take the right to bear arms away from a category of people that it deems dangerous." *Kanter*, 919 F.3d at 464 (Barrett, J., dissenting). This power "is not limited to case-by-case exclusions of persons who have been shown to be untrustworthy with weapons, nor need these limits be established by evidence presented in court.' Instead the legislature can make that judgment on a class-wide basis. And it may do so based on present-day judgments about categories of people whose possession of guns would endanger the public safety." *Id.* (citations omitted).

California's laws restricting open carry impose a comparable burden on the right to armed self-defense as the burdens imposed by presumptively constitutional laws identified in *Bruen*. The background check portion of the licensing requirement employs objective criteria and does not prohibit law-abiding citizens from carrying a firearm in public. And the prohibition

_____

felon disarmament has roots that are even more ancient"); *States v. Carter*, 669 F.3d 411, 415 (4th Cir. 2012) ("[N]othing in the historical record suggests a popular understanding of the Second Amendment at the time of the founding that extended to preserving gun rights for groups who pose a particular risk of using firearms . . . against innocent people, including those who committed drug felonies."); *Medina v. Whitaker*, 913 F.3d 152, 160 (D.C. Cir. 2019) ("[D]uring the revolution, the states of Massachusetts and Pennsylvania confiscated weapons belonging to those who would not swear loyalty to the United States.").

on open carriage still allows for concealed carriage, allowing individuals to arm themselves in public for self-defense.

The challenged laws are also justified by State interests comparable to the justifications that support the presumptively constitutional laws analyzed in *Bruen*. California's laws regulating the open carry of firearms and requiring a license to carry firearms in public seek to ensure that only law-abiding, responsible individuals are authorized to carry firearms in public. That is the very same justification for such conditions blessed by *Bruen*. 142 S. Ct. at 2138 n.9 (noting that permissible conditions were "designed to ensure only that those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens'"). And they ensure that the public will not be terrorized by the open and exposed carriage of firearms, a justification that is well-grounded in history. *See id.* at 2150.

### B.    The Equitable Factors Also Weigh Against a Preliminary Injunction

The district court also properly denied Plaintiffs' motion for a preliminary injunction based on its analysis of the equitable *Winter* factors, and more specifically because Plaintiffs failed to establish that the balance of equities tip in their favor or that an injunction is in the public interest. 1-ER-10. As with the first *Winter* factor, the district court reasonably

34

concluded that it did not need to decide whether Plaintiffs would suffer irreparable harm because they failed to meet the third and fourth *Winter* factors. In any event, Plaintiffs did not establish irreparable harm. They do not assert harm on any basis other than the alleged violation of their Second Amendment rights. But because they cannot establish a constitutional violation, *supra* pp. 28-34, Plaintiffs likewise cannot establish that they have suffered irreparable harm. Moreover, Plaintiffs "overstate[d] the harms they will likely suffer without a preliminary injunction." 1-ER-1. Plaintiffs argued, for example, that "[w]ithout an injunction, [they] will continue to be banned from exercising the presumptively protected Right to carry a handgun in public for self-defense." AOB at 22. But that is incorrect. Plaintiffs do have the ability to carry handguns in public. Mr. Baird has a license to carry a concealed firearm. 1-ER-68-69, 1-ER-71. Mr. Gallardo maintains that he is permitted to carry concealed as a retired military police officer under LEOSA. 1-ER--78-80. Plaintiffs have no basis to dispute the district court's conclusion that they "will not be without a means to defend themselves with handguns in public while the case is pending." 1-ER-11.

As to the third and fourth *Winter* factors, a district court "must balance the competing claims of injury and consider the effect of granting or withholding the requested relief," paying "particular regard for the public

consequences in employing the extraordinary remedy of injunction."
*Winter*, 555 U.S. at 24 (quotation marks and citation omitted).  Here, the
district court correctly observed that the balance of equities and the public
interest weigh against preliminary injunctive relief.  The court concluded
that "[i]f California cannot enforce sections 25850 and 26350 against those
who carry handguns in public, then it would lose its primary means of
limiting public handgun carrying to "ordinary, law-abiding citizens.  1-ER-
12, citing *Bruen*, 142 S. Ct. at 2122.  That would mean, as the district court
also correctly explained, that "[a] person who could not obtain a license to
carry a concealed handgun—due, for example, to a lack of 'good moral
character' or refusal to complete a 'course of training'—could circumvent
the state's laws by carrying the same gun openly."  1-ER-12, citing §
26150(a)(1), (4).  The district court reasonably concluded that those risks to
the public outweigh any harm arising from the ability to carry concealed in
public, but not open and unlicensed.

The district court's equitable analysis also took proper account of the
record in the proceedings below.  1-ER-12-13.  First, the Attorney
General's evidence established that expanding public carry risks public
safety.  This evidence included a study comparing the crime rates of the 33
states that have adopted "right-to-carry" laws—under which most residents

36

have the right to carry a firearm in most public places—to those of states that have not. 1-ER-86. Using 37 years of FBI crime statistics, the study concluded that right-to-carry laws "are associated with *higher* rates of overall violent crime, property crime, or murder." 1-ER-87, emphasis in original; *see also* 1-ER-88 (showing that states experienced a 13 to 15 percent increase in violent crime in the decade after adopting a right-to-carry law).

A more recent study confirmed that "there is consistent evidence that [right-to-carry] laws elevate violent crime in the decade after adoption." 1-ER-150-51. The study's author concluded that "[p]olicymakers and citizens should recognize that the best available empirical data to date supports the view that [right-to-carry] laws have resulted in statistically significant increases in violent crime in the ten-year period after adoption." 1-ER-151.

Another peer-reviewed study reflects a similar link between permissive public carry regimes and higher murder rates. It reviewed data from 1991 through 2005 and found a "significant[] associat[ion]" between right-to-carry states and higher homicide rates. ER 159. Those states experienced a 6.5 percent increase in the overall homicide rate, an 8.6 percent rise in "firearm-related" homicide rates, and a 10.6 percent increase in the

"handgun-specific" homicide rate. *Id.*; *see also Gould v. Morgan*, 907 F.3d 659, 671, 675 (1st Cir. 2018) (collecting additional studies).

This research supports a legislative judgment that an increase in guns carried by private persons in public places increases the risk that "'basic confrontations between individuals [will] turn deadly.'" *Woollard v. Gallagher*, 712 F.3d 865, 879 (4th Cir. 2013). Widespread open carry increases the "availability of handguns to criminals via theft," *id.* at 879, and such guns can then be used to "commit violent crimes" or be transferred to "others who commit crimes," U.S. Dep't of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives, *2012 Summary: Firearms Reported Lost and Stolen* (2013) at 2.

The evidence also reflected that widespread *open* carry, in particular, creates special risks, including to police and other law enforcement officials. In an unrebutted declaration the Attorney General submitted in opposition to Plaintiffs' motion for a preliminary injunction, the former president of the California Police Chiefs Association explained that when law enforcement responds to an active shooter, carrying of firearms by other individuals can have deadly consequences, including by "delaying first responders from [their] primary mission" of stopping the shooter and saving lives. 1-ER-168. In the aftermath of a shooting that left five police officers dead and nine

38

others wounded, the Dallas Police Chief lamented that officers "'don't know who the good guy is versus the bad guy when everyone starts shooting.'" *Id*. And when police officers respond to reports that there is a "man with a gun," or encounter an armed civilian on the streets, they often know little about the person's intent or mental state, or whether the person is authorized to carry a gun. 1-ER-167. These encounters can have fatal consequences. *Id*. Restrictions on public carry also reduce the amount of time that police must spend investigating handgun sightings, and help police quickly identify those persons carrying firearms who pose a threat. 1-ER-168; *accord Woollard*, 712 F.3d at 879-880 (recounting similar policing benefits).

The district court considered Plaintiffs' criticism of those studies, including the assertion that they broadly focus on public-carry, rather than open carry. 1-ER-13. But the district court observed that Plaintiffs offered "no countervailing evidence" and concluded that Plaintiffs' arguments regarding the Attorney General's evidence "[did] not eliminate its persuasive force." 1-ER-13. At bottom, the district court did not abuse its discretion in concluding that any harms to the Plaintiffs "outweighs the harms that would likely result from an immediate preliminary injunction." 1-ER-12; *see also* 1-ER-14 ("Baird and Gallardo ask the court to force California to allow anyone to carry openly in public without a permit while they attempt to

39

prove the state's licensing regime is unconstitutional. They have not shown such a broad injunction would serve the public interest.").

The district court also recognized that an injunction would inflict harm upon the State because "[a]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." 1-ER-13, citing *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, J., in chambers) (quotation and citation omitted). Enjoining the laws in question would instead upend the status quo, contrary to the purpose of an injunction. *Chalk v. U.S. Dist. Court Cent. Dist. Cal.*, 840 F.2d 701, 704 (9th Cir. 1988). Having failed to show that they—or anyone else—will suffer any irreparable harm if the laws that they challenge remain in effect while their claims are adjudicated, Plaintiffs did not establish that the equities and public interest favor an injunction.

## CONCLUSION

The district court's order denying Plaintiffs' motion for a preliminary injunction should be affirmed.

Dated:  February 28, 2023          Respectfully submitted,


ROB BONTA
Attorney General of California
THOMAS S. PATTERSON
Senior Assistant Attorney General
R. MATTHEW WISE
Supervising Deputy Attorney General


*/s/ Ryan R. Davis*

RYAN R. DAVIS
Deputy Attorney General
*Attorneys for Defendant Rob Bonta in his*
*Official Capacity as Attorney General of*
*California*

41

23-15016

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

---

**MARK BAIRD and RICHARD GALLARDO,**

　　　　　　　　　　Plaintiffs and Appellants,

　　**v.**

**ROB BONTA, in his official capacity as Attorney General of the State of California, and DOES 1-10,**

　　　　　　　　　　Defendants and Appellees.

---

## STATEMENT OF RELATED CASES

In *Nichols v. Brown, et al.*, No. 11-cv-9916-SSS-KES (C.D. Cal.), the district court previously rejected the claim that the Second Amendment guarantees a right to openly carry a firearm in public places. 17 F. Supp. 3d 989, 993-94, 1004-05 (C.D. Cal. 2014). On September 12, 2022, this Court remanded the case back to the district court for further proceedings consistent with *Bruen*. *Nichols v. Newsom, et al.*, No. 14-55873, 2022 WL 4295404 (9th Cir. Sept. 12, 2022). *Nichols* is distinct from this case, however, because Plaintiffs here claim the Second Amendment demands that they be allowed to carry not just openly but also *without a license*.

42

Dated:  February 28, 2023   Respectfully submitted,

          ROB BONTA
          Attorney General of California
          THOMAS S. PATTERSON
          Senior Assistant Attorney General
          R. MATTHEW WISE
          Supervising Deputy Attorney General

          */s/ Ryan R. Davis*

          RYAN R. DAVIS
          Deputy Attorney General
          *Attorneys for Defendant Rob Bonta in his*
          *Official Capacity as Attorney General of*
          *California*

43

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 23-15016

I am the attorney or self-represented party.

**This brief contains** 8,841 **words,** including 0 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

(●) complies with the word limit of Cir. R. 32-1.

( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

( ) is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

[ ] it is a joint brief submitted by separately represented parties.

[ ] a party or parties are filing a single brief in response to multiple briefs.

[ ] a party or parties are filing a single brief in response to a longer joint brief.

( ) complies with the length limit designated by court order dated _____.

( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/Ryan R. Davis **Date** 2/28/2023
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8** *Rev. 12/01/22*

# CERTIFICATE OF SERVICE

Case Name: __**Baird, Mark v. Rob Bonta**__          No. __**23-15016**__

I hereby certify that on <u>February 28, 2023</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**ANSWERING BRIEF**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>February 28, 2023</u>, at Sacramento, California.

| | |
|---|---|
| Eileen A. Ennis | */s/ Eileen A. Ennis* |
| Declarant | Signature |

SA2023300060
36967093.docx