No. 23-15016

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MARK BAIRD, *et ano.*,
*Plaintiffs-Appellants*,

v.

ROB BONTA, in his official capacity as
Attorney General of the State of California,
*Defendant-Appellee*,

Appeal from United States District Court for the Eastern District of California
Civil Case No. 2:19-cv-00617-KJM-AC (Honorable Kimberly J. Mueller)

## REPLY BRIEF FOR PLAINTIFFS-APPELLANTS

Amy L. Bellantoni
THE BELLANTONI LAW FIRM, PLLC
2 Overhill Road, Suite 400
Scarsdale, New York 10583
(914) 367-0090 (t)
(888) 763-9761(f)
*abell@bellantoni-law.com*

*Attorneys for Plaintiffs-Appellants*

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ....................................................................... i

I. *Heller*, *McDonald*, and *Bruen* Compel the Rejection of "Public Safety" Considerations at Any Stage of the *Winter* Analysis........................................... 1

II. A Proper Application of *Winter* Would Not Be Inconsistent With *Bruen* .......... 4

III. *Winter's* Likelihood of Success Factor is the Cornerstone of Injunctions Implicating the Second Amendment ............................... 8

IV. Appellee's Remaining Arguments Also Lack Merit ....................................... 14

    A. An Injunction Will Not Prevent California From Punishing Criminals . 14

    B. Open Carry and Surety Statutes ............................................. 17

CONCLUSION .................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Agency for Int'l Dev. v. Alliance for Open Soc'y Int'l, Inc.*,
 ⸺ U.S. ⸺, 133 S.Ct. 2321 (2013)............................................................. 12

*Balistreri v Pacifica Police Dept.*,
 901 F2d 696 (9th Cir 1988)................................................................. 10

*Boland v. Bonta*,
 2023 WL 2588565 (C.D. Cal. Mar. 20, 2023)...................................... 4

*Cal. Chamber of Commerce v. Council for Education and Research on Toxics*,
 29 F.4th 468 (9th Cir. 2022) ............................................................... 6

*California v. Azar*,
 911 F.3d 558 (9th Cir. 2018)................................................................ 8

*D.C. v. Heller*,
 554 U.S. 570 (2008) ............................................................................. 1

*Elrod v. Burns*,
 427 U.S. 347 (1976) ............................................................................. 9

*Gross v. United States*,
 390 U.S. 62 (1968) ............................................................................. 13

*Indep. Bankers Ass'n of Am. v. Heimann*,
 613 F.2d 1164 (D.C. Cir. 1979) ........................................................ 13

*Jacobsen v. U.S. Postal Service*,
 812 F.2d 1151 (9th Cir.1987)............................................................... 9

*Klein v. City of San Clemente*,
 584 F.3d 1196 (9th Cir. 2009)......................................................Passim

*McDonald v. City of Chicago, Ill.*,
 561 U.S. 742 (2010) ............................................................................. 1

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Moore v. Madigan*,
    702 F.3d 933 (7th Cir. 2012)................................................................. 13

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
    142 S. Ct. 2111 (2022) ................................................................. 1, 2, 3

*Peruta v. County of San Diego*,
    824 F3d 919 (9th Cir 2016)................................................................. 15

*Preminger v. Principi*,
    422 F.3d 815 (9th Cir. 2005)................................................................. 4

*Rodriguez v. Robbins*,
    715 F.3d 1127 (9th Cir. 2013).......................................................... 5, 12

*Rogers v. Grewal*,
    207 L. Ed. 2d 1059, 140 S. Ct. 1865 (2020) ........................................ 2

*Shuttlesworth v. City of Birmingham, Ala.*,
    394 U.S. 147 (1969) ............................................................................ 2

*Winter v. Natural Res. Def. Council, Inc*.,
    129 S.Ct. 365 (2008) ...................................................................Passim

*Woolard v. Gallagher*,
    712 F.3d 865 (4th Cir. 2013)................................................................. 3

*Wrenn v. D.C.*,
    864 F.3d 650 (D.C. Cir. 2017) ............................................................ 12

# TABLE OF AUTHORITIES

**Page(s)**

**Statutes**

18 USC 922(g) .................................................................................. 16

28 U.S.C. § 2106 ............................................................................... 13

Cal. Penal Code § 25850 ............................................... 12, 14, 15, 17

Cal. Penal Code § 26350 ............................................... 12, 14, 15, 17

iii

**I.** ***Heller, McDonald,*** **and** ***Bruen*** **Compel the Rejection of "Public Safety" Considerations at Any Stage of the** ***Winter*** **Analysis**

The Supreme Court painstakingly conducted historical analyses of the scope and meaning of the Second Amendment in *Heller*[1] and *McDonald*[2]; over a decade later in *Bruen*[3] the Court applied the same text, history, and tradition standard in reaching its decision.

Supreme Court jurisprudence reveals a consistent rejection of public safety considerations in the context of Second Amendment challenges. See, *Heller*, at 634 (rejecting Justice Breyer's public safety interest balancing because "like the First [Amendment] it is the very product of an interest balancing by the people…"); *McDonald*, at 783 (observing that the "right to keep and bear arms, however, is not the only constitutional right that has controversial public safety implications. All of the constitutional provisions that impose restrictions on law enforcement and on the prosecution of crimes fall into the same category.") (citing cases).

Less than a year ago, the *Bruen* Court reiterated its rejection of public safety interest balancing in Second Amendment challenges. "Like that dissent in *Heller*, the real thrust of today's dissent is that guns are bad and that States and local jurisdictions should be free to restrict them essentially as they see fit. That argument

---

[1] *D.C. v. Heller*, 554 U.S. 570 (2008).
[2] *McDonald v. City of Chicago, Ill.*, 561 U.S. 742 (2010).
[3] *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022).

1

was rejected in *Heller*, and while the dissent protests that it is not rearguing *Heller*, it proceeds to do just that…*Heller* correctly recognized that the Second Amendment codifies the right of ordinary law-abiding Americans to protect themselves from lethal violence by possessing and, if necessary, using a gun." *Bruen*, at 2160–61.

*Bruen* abrogated the various interest balancing tests "made up"[4] by the circuit courts and reiterated that courts must look to text, history, and tradition to determine whether an individual's conduct falls outside of the Second Amendment's 'unqualified command.' *Bruen*, at 2126, 2129-2130.

Appellee failed to identify any exception to the Supreme Court's abrogation of means-end scrutiny in the Second Amendment context. *Bruen*, at 2127 (relying on the fact that "*Heller* and *McDonald* do not support applying means-end scrutiny in the Second Amendment context" to abrogate the two-step circuit tests).

Double-minded, Appellee acknowledges that *Bruen* "jettisoned the two-step approach"[5] yet presses this Court to endorse its application here.[6] Over the span of

---

[4] *Rogers v. Grewal*, 207 L. Ed. 2d 1059, 140 S. Ct. 1865, 1867 (2020) (Thomas, J., dissenting).

[5] Appellee Br. at 15-17.

[6] Appellee's opening sentence reveals the disconnect. The premise that California "*allows* individuals to carry firearms in public for self-defense" [Appellee Br. at 1] bears out the State's refusal, or inability, to understand that individuals cannot be required to seek the government's permission to exercise the rights enumerated in the Bill of Rights. And it is beyond cavil that criminalizing the mere exercise of an enumerated right violates the Constitution. See, *Shuttlesworth v. City of Birmingham, Ala.*, 394 U.S. 147 (1969) (reversing conviction under statute

three pages, Appellee recounts the lower court's reliance on crime statistics, public safety studies, and the State's law enforcement 'expert' who never worked in an open carry jurisdiction but only speculated that open carry would surely endanger the public[7] as a reason to deny Appellants' motion for a preliminary injunction.

Appellee's reliance on *Woolard v. Gallagher*, 712 F.3d 865, 879 (4th Cir. 2013) for the proposition that "an increase in guns carried by private persons in public places increases the risk that basic confrontations between individuals [will] turn deadly" flouts the text, history, and tradition standard required for Second Amendment claims. "Unqualified deference" to American's historical traditions – and not "legislative interest balancing" – is required because when it comes to the Second Amendment, "it is not deference [to the legislature] that the Constitution demands." *Bruen*, at 2131.[8]

---

criminalizing First Amendment activity without first having obtained a government license).

[7] Appellee Br. at 36-39. Appellee also incorrectly represents that Appellants submitted no evidence to rebut Appellee's 'expert' Police Chief Kim Raney. [Appellee Br. at 38]. The deposition transcript of Charles "Chuck" Haggard, a law enforcement officer with decades of experience in an open carry state, was submitted by Appellants in reply.

[8] The *Woodward* language, which speaks to the public at large, showcases why California should have no discretion to decide who can and cannot carry a handgun for self-defense. The mindset that "more guns = more violence" reveals a culture intent on restricting the public's ability to carry a handgun for self-defense generally, without regard for, and at the expense of, individual rights.

## II. A Proper Application of *Winter* Would Not Be Inconsistent With *Bruen*

Appellants correctly argued below that interest balancing is improper in Second Amendment challenges. The lower court improperly used *Winter*'s "balance of equities" factor to backdoor public safety and policy considerations in contravention of the Supreme Court precedent in *Heller*, *McDonald,* and *Bruen* explicitly rejecting means-end scrutiny.

Proper application of the *Winter* factors would necessarily not be inconsistent with *Bruen.*

For example, in his decision granting the plaintiffs' application for a preliminary injunction in *Boland v. Bonta*[9], Judge Carney balanced the equities without resorting to means-end scrutiny in rejecting California's improperly advanced "public safety" claims.

Relying on this Circuit's precedent, Judge Carney observed that "public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution." *Boland*, at *9 quoting, *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005); *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009) (explaining that it is in the public interest to halt the 'ongoing enforcement of the potentially unconstitutional

---

[9] *Boland v. Bonta*, No. SACV2201421CJCADSX, 2023 WL 2588565 (C.D. Cal. Mar. 20, 2023).

regulations' because those regulations would infringe not only on the constitutional rights of the plaintiffs but also of the rest of the public subject to the same regulation).

What's more, "the government cannot suffer harm from an injunction that merely ends an unlawful practice such as denying Californians' Second Amendment rights." *Ibid.* quoting, *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013).

Skipping the first two (2) *Winter* factors, the lower court improperly based its "balancing the equities" determination on means-end public safety considerations.

> "It is not necessary to decide whether California's Penal Code restricts conduct within the Second Amendment's plain text under *Bruen* or whether the challenged Penal Code sections are within the nation's historical tradition of firearms regulation. Nor is it necessary to decide whether Baird and Gallardo would suffer irreparable if the court does not enter a preliminary injunction. As explained below, they have not shown the balance of harms and public interest favor a preliminary injunction."

[1-ER-11].

Without analyzing the merits of Appellants' Second Amendment claims and whether they will suffer irreparable harm without an injunction, the information relied on to "balance the harms" is no more than judicial fabrication to reach a predetermined outcome.

Avoidance of the first two *Winter* factors was not unintentional. Had the lower court engaged in an analysis of the merits[10] of Appellants' Second Amendment claims and forced Appellee to meet its burden under the *Bruen* test to justify its regulations, the lower court would have been forced to move forward to the remaining *Winter* factors based on the result: California's failure to identify an historical analogue means that sections 25850 and 26350 violate the Second (and Fourteenth) Amendments.

The violation of Appellants' constitutional rights would have compelled the conclusion that they will continue to suffer irreparable harm in the absence of an injunction. And because "the government cannot suffer harm from an injunction that merely ends an unlawful practice, such as denying Californians' Second Amendment rights, the lower court would have been constrained to find that the public interest would be served by enjoining the unconstitutional statutes.

> "Without a preliminary injunction enjoining enforcement of the UHA's CLI, MDM, and microstamping provisions, Plaintiffs will continue to suffer harm because the government will continue infringing their Second Amendment rights. 'It is always in the public interest to prevent the violation of a party's constitutional rights.' *Cal. Chamber of Commerce v. Council for Education and Research on Toxics*, 29 F.4th 468, 482 (9th Cir. 2022) (cleaned up).

---

[10] There was no finding below that Appellants failed to meet their burden of demonstrating a likelihood of success on the merits. [Appellee Br. at 21]. The lower court (erroneously) conducted no analysis of the merits of Appellants' Second Amendment claims.

A government that cries "hardship" at the idea of restoring a basic constitutional right is the very type of government the Second Amendment was codified to protect its citizens against.[11] Criminalizing the peaceable carriage of firearms has never increased public safety. To the contrary, an unarmed citizenry is ripe for victimization by criminals and oppression by tyrants.

Governor Reagan, who signed the Mulford Act of 1967 into law[12], would later comment that he saw "no reason why on the street today a citizen should be carrying loaded weapons"[13] – a view repugnant to the plain text of the Second Amendment.

The *Bruen* test made clear that the plain text of the Second Amendment presumptively protects the Right to carry weapons. If no historical analogue tied to 1791 can be identified by the government, the regulation fails. Full stop.

Appellees identified no historical analogue below. And no historical analogue will be found that regulates the peaceable possession and carriage of weapons – as the text mandates, the right to keep and bear Arms "shall not be infringed."

---

[11] Like the post-civil war restrictions on the possession of firearms by freed black men, it was the 'safety' of those in control and preservation of their policies, and not 'public safety' that motivated the passage of the Mulford Act of 1967. https://www.history.com/news/black-panthers-gun-control-nra-support-mulford-act

[12] The Mulford Act of 1967 implemented Penal Code § 25850.

[13] https://www.snopes.com/fact-check/reagan-loaded-guns-quote/

Skirting the merits factor relieved California of its legal burden and rendered the harms to Appellants meaningless, casting the Amendment and Supreme Court precedent to the swine.

### III.  *Winter*'s Likelihood of Success Factor is the Cornerstone of Injunctions Implicating the Second Amendment

Before turning to the balancing of equities and public interest factors, which merge when the injunction is sought against the government[14], the lower court was first required to reach a determination of the first two *Winter* factors: (i) likelihood of success on the merits and (ii) irreparable harm.

It is no accident that consideration of the merits and irreparable harm are the first considerations in the *Winter* analysis.  If a party cannot establish a likelihood of success on the merits, the inquiry ends. Likewise, where no irreparable harm exists, no injunction may issue.

Just as *Winter* established that a strong showing on likelihood of success on the merits cannot compensate for a lesser showing for irreparable injury [*Winter*, 129 S.Ct. at 375] a determination that sidesteps the first two *Winter* factors – like the decision on appeal - is legally unsound.

---

[14] *California v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018).

This is particularly so where a party seeks to enjoin an unconstitutional statute. Without considering a party's likelihood of success on the merits and irreparable harm, the remaining factor(s) are decided in a vacuum.

In *Klein v. City of San Clemente*, 584 F.3d 1196, 1200 (9th Cir. 2009), this Court began its analysis at the text of the Constitution and then applied the relevant test for First Amendment challenges. The City's failure to meet its burden in *Klein* meant that the statute violated the Constitution, which led to a presumption of irreparable harm.

> "Both this court and the Supreme Court have repeatedly held that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); see also *Sammartano*, 303 F.3d at 973–74; S.O.C., Inc., 152 F.3d at 1148; *Jacobsen v. U.S. Postal Service*, 812 F.2d 1151, 1154 (9th Cir.1987)."

*Klein*, at 1207–08.

The Supreme Court's historical analysis in *Heller*, *McDonald* and *Bruen* reveal multiple comparisons between the First and Second Amendments. "This Second Amendment standard accords with how we protect other constitutional rights. Take, for instance, the freedom of speech in the First Amendment, to which *Heller* repeatedly compared the right to keep and bear arms." *Bruen*, at 2130 (citation omitted).

And because the Second Amendment is not a "second-class right subject to an entirely different body of rules than the other Bill of Rights guarantees"[15], infringements of Second Amendment protected conduct, "even for minimal periods of time"[16] must be presumed to constitute irreparable injury.

Had the lower court applied the first two (2) *Winters* factors, it would have been forced to enjoin California Penal Codes 25850 and 26350, which make it a crime to engage in conduct presumptively protected by the Second Amendment.

Peaceably carrying a handgun in public for self-defense *is* the plain text of the Amendment ("bear Arms") and the "central component" of the Right.[17] The mandate that it "shall not be infringed" forecloses the constitutional viability of imposing criminal sanctions for its exercise.[18]

Appellee failed to identify *any* historical analogue here and below - nor can he. *Bruen* reconfirmed that public carry is a presumptively protected right.[19] There

---

[15] *Bruen*, at 2156 quoting, *McDonald*, at 780.

[16] *Cf, Klein*, at 1207-08.

[17] *Bruen*, at 2133 ("As we stated in *Heller* and repeated in *McDonald*, "individual self-defense is the *central component* of the Second Amendment right") (cleaned up); see also *Heller*, at 628 ("the inherent right of self-defense has been central to the Second Amendment right").

[18] "Today, unfortunately, many Americans have good reason to fear that they will be victimized if they are unable to protect themselves. And today, no less than in 1791, the Second Amendment guarantees their right to do so." *Bruen*, at 2161. As this Circuit has held, "there is, in general, no constitutional duty of state officials to protect members of the public at large from crime." *Balistreri v Pacifica Police Dept.*, 901 F2d 696, 699-700 (9th Cir 1988).

[19] *Bruen*, at 2130, 2134.

is no historical tradition[20] of regulating public carry because "[o]nly after the ratification of the Second Amendment in 1791 did public-carry restrictions proliferate." *Bruen*, at 2145.

Appellee's reliance on antebellum period regulations is misplaced. *Bruen*'s discussion of antebellum period state court decisions was at the insistence of defendant New York State, but never blossomed into recognition that any 'tradition' existed. *Bruen*, at 2144-2147. The surety statutes of the mid-19th century are even further removed from 1791 and similarly lack evidence of an historical tradition. *Bruen*, at 2148.

Post-ratification evidence is to be "treated as mere confirmation" of the scope of the Second Amendment after looking to the plain text and the historical traditions at the time of its ratification. *Bruen*, at 2137.

> But to the extent later history contradicts what the text says, the text controls [because] liquidating' indeterminacies in written laws is far removed from expanding or altering them…Thus, post-ratification adoption or acceptance of laws that are inconsistent with the original meaning of the constitutional text obviously cannot overcome or alter that text.

*Bruen,* at 2137 (cleaned up).

---

[20]*Bruen*, at 2137 ("we have generally assumed that the scope of the protection applicable to the Federal Government and States is pegged to the public understanding of the right when the Bill of Rights was adopted in 1791").

The State having failed to meet its burden to justify its regulations under the *Bruen* test, California Penal Code sections 25850 and 26350 violate the Second Amendment and Appellants are presumed to suffer irreparable harm without an injunction.

Consistent with this Circuit's precedent, an immediate injunction of sections 25850 and 26350 is warranted because there is a "significant public interest" in upholding the right to bear arms for self-defense and the "ongoing enforcement of the potentially unconstitutional regulations ... would infringe not only [Appellants' Second Amendment rights], but also the interests of other people" subjected to the same restrictions. *Klein*, at 1208.

Moreover, the government "cannot suffer harm from an injunction that merely ends an unlawful practice" such as denying Californians' Second Amendment rights." *Boland*, at *9, quoting, *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013).

Each *Winter* factor tips in Appellants' favor, warranting vacatur of the lower court order and remand with instructions to enter a permanent injunction[21] against the enforcement of California Penal Codes 25850 and 26350.

---

[21] See, *Wrenn v. D.C.*, 864 F.3d 650, 668 (D.C. Cir. 2017) (directing the permanent injunction of firearm regulations in appeal of denial of preliminary injunction); *Wrenn*, at 667 citing, *Agency for Int'l Dev. v. Alliance for Open Soc'y Int'l, Inc.*, —– U.S. ——, 133 S.Ct. 2321, 2332 (2013) (affirming circuit court's affirmance of a

Such a conclusion at this stage makes a certain outcome "inevitable", and this Court has the power to dispose of Appellants' claims as may be just under the circumstances, and should do so to obviate further and entirely unnecessary proceedings below. *Gross v. United States*, 390 U.S. 62, 71 (1968) (cleaned up) (quoting 28 U.S.C. § 2106); see also *Indep. Bankers Ass'n of Am. v. Heimann*, 613 F.2d 1164, 1167 (D.C. Cir. 1979) ("Although the case could now be remanded to the District Court for a decision on the merits, we have concluded that such a course is unnecessary and indeed would be unduly wasteful of judicial resources.") (citing 28 U.S.C. § 2106).

Because California's criminalization of conduct presumptively protected under the text, history, and tradition of the Second Amendment, and in light of Appellee's failure to identify an historical analogue, it would be a waste of judicial resources to remand to the lower court. The unconstitutionality of the statutes presents no factual questions for determination in a trial. *C.f., Moore v. Madigan*, 702 F.3d 933, 942 (7th Cir. 2012) (reversing denials of preliminary injunctions and remanding with instructions to enter declarations of unconstitutionality and permanent injunctions).

---

grant of a preliminary injunction based only on the merits of petitioners' constitutional challenge).

## IV. Appellee's Remaining Arguments Also Lack Merit

### A. An Injunction Will Not Prevent California From Punishing Criminals

The Constitution did not 'create' rights – it codified preexisting rights, regarded at the time of the Amendment's adoption as "rooted in the natural right of resistance and self-preservation." *Bruen*, at 2157 citing, *Heller,* at 594.

Ground zero, therefore, is the unqualified presumption that *every* individual has the right to self-defense and not, as Appellee urges the first sentence of his brief, only those individuals that California's licensing scheme (graciously) "allows" to carry firearms for self-defense. Appellee Br. at 1.

Appellee's starting point is not the presumption of an individual right to self-defense, but a blanket ban of the right through the enforcement of Penal Code sections 25850 and 26350. From scratch, California doles out the privilege (of *concealed* carry) through a may-issue licensing scheme that imbues unfettered discretion in government officials to subjectively decide on a case-by-case basis who they feel is sufficiently moral and fit to carry a handgun concealed.

But *Bruen* rejected licensing schemes like California's that require the "appraisal of facts, the exercise of judgment, and the formation of an opinion." *Bruen*, at 2138, n. 9. California's ban on public carry and subsequent discretionary

14

issuance of permission to carry a firearm (concealed) violates the Second Amendment.[22]

Under *Peruta II*[23] this approach may be acceptable for concealed carry, which this Circuit has declared is a mere privilege. But there has never been an historical tradition of banning, licensing, or regulating open carry, nationally or in California nor has Appellee identified one.[24]

No open carry license has been issued in California since 2012, and the state-required licensing forms published by Appellee only provide a path to (the potential to) carry concealed[25]; no 'open carry' application exists.

Enjoining sections 25850 and 26350 will have no effect on California's ability to "limit[] public handgun carrying to ordinary, law-abiding citizens."[26] First, it is a fallacy to think that California's licensing scheme limits the handgun-carrying crowd to "law-abiding citizens." Armed criminals abound in California. Second, only law-abiding people refrain from carrying a firearm without a license; criminals are not deterred by a licensing requirement. Third, California has the tools it needs to punish

---

[22] See, *Bruen*, at 2138 n. 9 (conditioning the continued existence of may-issue schemes, like California's, on the transition to objective factors like the shall-issue regimes).

[23] *Peruta v. County of San Diego*, 824 F3d 919, 939 (9th Cir 2016).

[24] Penal Codes 25850 and 26350 were enacted in 1967 and 2012, respectively, but do not establish a Californian 'tradition'; "to the extent later history contradicts what the text says, the text controls." *Bruen*, at 2137.

[25] 3-ER-454; Penal Code § 26225.

[26] Appellee Br. at 36, citing 1-ER-12.

(and attempt to deter) firearm possession by those prohibited by law from possessing firearms[27] and individuals who use a firearm in the commission of a crime.

California's ability to punish criminal behavior lives on in other Penal Code sections, as Appellee conceded during oral argument. 2-ER-29-30 (acknowledging the existence of federal and state laws punishing the possession of firearms by categorically disqualified individuals, including convicted felons and domestic violence misdemeanants).[28] Appellee's frustration with losing control over *everyone* does not justify its blanket prohibition of constitutionally protected, presumptively lawful conduct.[29]

The statutes' blanket ban is over broad and terminates the protected Right for law-abiding citizens and criminals alike. Enjoining 25850 and 26350 removes the punishment for ordinary people who peaceably carry a handgun for self-defense. Exercising one's Second Amendment rights is not 'criminal behavior' and should not be treated as such.

---

[27] 18 USC 922(g).

[28] Counsel went on to misstate Appellants' position during oral argument. Appellants do not seek to "do away with the licensing scheme entirely" [2-ER-30], only the criminal penalties for open carry. Appellants take no position on California's licensing requirement for concealed carry. But the burden falls on the State to structure its criminal statutes to ensure that constitutionally protected conduct, like open carry, is not punished.

[29] There was also "little evidence that authorities ever enforced surety laws." *Bruen*, at 2149-50.

### B. Open Carry and Surety Statutes

There is no "well-grounded history" of banning open carry, nor has the mere act of openly carrying a handgun (or any weapon) been interpreted as conduct "terrorizing" the public or breaching the peace. (Appellee Br. at 34).

*Bruen* flatly rejected New York's claim that "merely carrying firearms in populous areas breached the peace *per se*" because "if the mere carrying of handguns breached the peace, it would be odd to draft a surety statute requiring a complainant to demonstrate reasonable cause to fear an injury, or breach of the peace rather than a reasonable likelihood that the arms-bearer carried a covered weapon.[30] After all, if it was the nature of the weapon rather than the manner of carry that was dispositive, then the 'reasonable fear' requirement would be redundant." *Bruen*, at 2150. [31]

### CONCLUSION

The lower court Order denying Appellants' preliminary injunction should be reversed and remanded for proceedings consistent with the arguments made herein,

---

[30] This language further establishes that the open carriage was the traditional means of carrying a weapon in public. But even so, the concealment of a weapon alone did not trigger the surety laws – complainants were required to point to some other conduct to establish reasonable cause to fear an injury, or breach of the peace. "Manner of carry", therefore does not translate into concealed vs open, but rather peaceable vs breaching the public order.

[31] There was also "little evidence that authorities ever enforced surety laws." *Bruen*, at 2149-50.

or in the alternative, this Court should issue a permanent injunction of California Penal Code sections 25850 and 26350, as it would be a waste of judicial resources to remand to the lower court.

Dated: April 6, 2023

THE BELLANTONI LAW FIRM, PLLC
*Attorneys for Plaintiffs-Appellants*

By: ___*Amy L. Bellantoni*_____
Amy L. Bellantoni
2 Overhill Road, Suite 400
Scarsdale, New York 10583
(914) 367-0090 (t)
(888) 763-9761 (f)
abell@bellantoni-law.com

18

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 23-15056

I am the attorney or self-represented party.

**This brief contains** 3,914 **words,** including 0 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

⦿ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  ☐ it is a joint brief submitted by separately represented parties.
  ☐ a party or parties are filing a single brief in response to multiple briefs.
  ☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated _____.

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/ Amy L. Bellantoni     **Date** 4/6/2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**                                                    *Rev. 12/01/22*